# Brown *et al.* *versus* Vandergrift *et al.*

1. Brady leased to Lambing a lot of land, to have the sole right to bore for oil, &c., for twenty years, Lambing to commence operations in sixty days and continue with due diligence ; if he should cease operations twenty days at any one time, Brady might resume possession. There were other covenants in the lease, and it was then stipulated that a failure of Lambing to comply with any one of the conditions, should work a forfeiture, and Brady might enter and dispose of the premises as if the lease had not been made. It was further agreed that if Lambing did not commence operations at the time specified, he should pay Brady $30 per month until he should commence : *Held*, that the covenant of forfeiture was modified, not abrogated, by the clause for payment of rent.

2. Lambing did not commence operations ; he paid four months' rent; he omitted payment for eleven months and then tendered the amount for that time : *Held*, that the lessor might refuse the tender and insist on the forfeiture.

3. In such case time is of the essence of the contract, and equity follows the law and will enforce the covenant of forfeiture as essential to do justice.

4. Equity abhors a forfeiture when it works a loss that is contrary to equity, not when it works equity and protects the lessor against the laches of the lessee.

November 20th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Butler county :* Of October and November Term 1875, No. 208.

This was an action of ejectment, brought July 31st 1874, by James E. Brown, R. L. Brown and B. B. Campbell against J. J. Vandergrift, George V. Foreman, John Satterfield, H. L. Taylor and Owen Brady, for a tract of thirty acres of land in Donegal township.

The title to the land in dispute, which was part of a larger tract,

containing seventy acres, was in Owen Brady, one of the defendants, on the 20th of April 1872. On that day he made an agreement of lease with James M. Lambing. By the agreement, " in consideration of the covenants, agreements and reservations " mentioned in it, and of $225, Brady leased to Lambing " all the right, title, interest and claim," to a certain piece of land described, &c., containing thirty acres ; Lambing " to have the sole and exclusive right to bore and dig for oil on said lot and to gather and collect the same for the term of twenty years, on the following conditions : (Lambing) " agrees to commence within sixty days to bore or dig for oil on said lot and to continue, with due diligence, to prosecute the same to success or abandonment ; if (Lambing) shall cease operations for twenty days at any one time, then this lease and the rights hereby granted shall be null and void, and (Brady) shall resume possession of the premises." Lambing to give Brady, as rent or royalty, one-eighth of the oil, and to allow Brady to enter the premises for the purpose of inspecting the operations and examining the books, &c. Lambing to pay all taxes ; Brady reserving a right of way through the lot and Lambing to have a right of way to his lot ; Lambing not to put up any building not necessary in the business of producing and storing oil upon the lot. Brady transferred none " other of his rights and privileges on said lot except the right of producing oil ;" Lambing to have the right to remove any machinery or other property which he may have placed on the premises. After other covenants and reservations, not important, the lease proceeded : " It is moreover expressly agreed by and between the parties to this instrument that a failure of (Lambing) to comply with any one of the reservations, conditions or agreements contained in the within instrument, which by its terms are to be done, kept or performed by (Lambing), shall work a forfeiture of the rights hereby granted, and that (Brady) may enter upon said ground, and dispose of the same as if this lease had not been made. And further agreed, that should (Lambing) not commence operations at the time specified (he) agrees to pay to (Brady) the sum of $30 per month for each and every month until such time as drilling may be commenced."

Lambing did not commence operations in accordance with the lease.

In September 1872 Brady sued Lambing for three months' rent and recovered a judgment for $90, which was paid by Lambing ; in January 1873 he paid Brady $30 more ; he made no further payments on account of the rent. He did not commence operations for oil on the premises, and a few months afterwards his interest in the lease became vested in the plaintiffs.

On the 6th of May 1873 Brady entered into articles of agreement with the other defendants to convey to them the whole seventy acres, "free and clear of all encumbrances, excepting thirty acres

[Brown *v.* Vandergrift.]

leased to Lambing," the vendees to have possession from the date of the agreement. Subsequently, on the 30th of August 1873, one of the plaintiffs tendered to Taylor, one of the defendants, $330, for eleven months' rent. It was refused.

The questions in the case were the construction of the lease, particularly as related to the bearing of the concluding clause for payment of rent on the provisions for forfeiture, and the effect of the receipt of rent by Brady as a waiver of the right of forfeiture.

The case was tried March 26th 1875, before Bredin, J.

The plaintiffs gave evidence that the defendants were in possession of the premises; and that they, other than Brady, had sunk oil-wells, &c., and procured large quantities of oil, amounting to more than 15,000 barrels. Campbell, one of the plaintiffs, testified that in August 1873 he gave defendants notice that plaintiffs claimed to be owners of the lease of Lambing, and shortly afterwards tendered $330 for eleven months' rent.

For defendants, there was evidence that in February or March 1873 Lambing told Brady that if he could sell the farm, he, Lambing, would give up the lease; that he would not stand in the way of Brady making a sale; Lambing said he did not propose to hold the lease.

The following are points of plaintiffs with their answers :—

4. The clause in the lease from Brady to Lambing, providing for the payment monthly of $30, is a provision in lieu of the commencement and prosecution of operations under said lease; and the election to commence and prosecute the work, or pay the money, is in Lambing, the lessee, and those claiming under him.

Answer. "We affirm that as to commencing operations; but we say that if Lambing commenced operations, he was bound to prosecute with due diligence, and if he stopped for twenty days his lease would be forfeited. Affirmed as to commencing operations."

5. If Lambing elected to pay the money provided for in the lease as an equivalent for operating the same, and Brady accepted the money, the forfeiture provided for in the lease was waived and cannot now be asserted.

Answer. " We refuse that, with the qualification that when Brady accepted the money he waived the forfeiture up to September 1872, and if he received $30 after, he waived the forfeiture up to that date and for another month, but that did not affect subsequent breaches. In other words, if Lambing failed afterwards to pay, there was nothing to prevent Brady from declaring it a forfeiture at the end of another month."

6. The action brought by Brady before the justice, and the collection of the rent sued for, and the subsequent receipt of rent from Lambing, constitute a waiver of the forfeiture of the title of Lambing.

[Brown *v.* Vandergrift.]

Answer. " We affirm that as a waiver up to the date of the receipt, and no further."

7. There is no evidence in the case to authorize the jury to find an abandonment of the lease from Brady to Lambing.

Answer. " We refuse this point and submit the evidence to the jury."

8. Upon the whole evidence the verdict should be for the plaintiffs for the land described in the writ.

Answer. " We refuse this point."

The following are points of the defendant :—

2. If the court should be of opinion that the action can be maintained on the title passed by the agreement, then the action is in the nature of a bill of equity to enforce specific performance, and in absence of evidence, showing performance of the covenant on the part of Lambing and his assigns, the plaintiff cannot recover.

Answer. " We affirm this point. We say, as we have said in our general charge, Lambing must show performance of the agreement on his part, or tender, or a waiver on the part of the defendant from time to time. In this case, at the time of bringing suit, there was some $600 or $700 of rent due. There is evidence of a tender of $330, nearly a year before bringing suit, but no other offer of performance subsequent, as to that it was the duty of the plaintiffs to keep up the tender from time to time."

3. The collection of $30 a month by Brady, until September 20th 1872, did not amount to a waiver of his right to treat the lease as void for the subsequent breaches of the agreement, but he had still the right to insist on the performance of the agreement, and, upon the breach thereof, to dispose of the land as if the lease had not been made.

Answer. " This we affirm. If there were subsequent breaches of the agreement to pay $30 per month, we say, if Lambing failed to keep this agreement, the party of the first part may re-enter ;. that we have answered in our general charge. We say to the jury, that it was Lambing's duty to pay, or offer to pay, from time to time, in order to carry out the provisions of the lease to him. If he did not do so he cannot stand off, and, after other parties put down a well, then come in and claim the production. We say that it was not Brady's business to run after the plaintiffs and demand the money ; the money was payable to Brady ; it was their place to come to him. The money became due every month, and it was their business to hunt Brady up and pay him the money, and not for Brady to run after them. It was not necessary for him to make demand, but it was their business to look Brady up and pay it. If you find, therefore, that Lambing, or his assigns, did not comply with the compact under the instructions, your verdict should be for the defendants generally ; if you find that he did comply, you find for the plaintiffs."

30 P. F. Smith—10

[Brown *v.* Vandergrift.]

The court charged :—

\* \* \* " According to terms and conditions of this agreement, we say to you, that this is a lease of land, for the purpose of mining and boring for oil, and for no other purpose. The party of the second part agrees to give to the party of the first part, his heirs or assigns, as rent or royalty, the following proportion of all the oil that may be obtained from said lot of ground, to wit: one-eighth equal part, &c. There are several other provisions in the article which it is not necessary to read to the jury. The last clause is a very important one, and the clause which governs the case.

" 'And further agreed, that should the party of the second part, not commence operations at the time specified, the said second party agrees to pay, to the party of first part, the sum of $30 per month, for each and every month, until such times as drilling may be commenced.'

["Now, you will recollect, that according to the terms of the agreement, the party of the second part was to commence operations in sixty days, and prosecute with due diligence to success or abandonment; and it is contended that the clause, with regard to commencing operations, is entirely abrogated by this clause, in which the party of the second part agrees to pay $30 per month. We say to you, that this clause is a substitution for that, in regard to commencing operations in sixty days, as far as the time of commencing operations is concerned. That is done away with by this subsequent clause, which provides that he may pay $30 per month until operations are commenced. According to the terms and conditions of this article, a failure of the party of the second part to comply with all the requirements, was to work a forfeiture of his rights, except, that if he failed to commence operations within the required time, he might pay $30 per month instead. If he failed to pay every month, Brady might declare it a forfeiture, and re-enter at pleasure.] It appears that Brady never was out of possession of this part of his farm. If Lambing failed to pay any of these monthly payments of $30, at the time they came due, Brady could refuse to receive payment after the time had gone by, and treat it as a forfeiture of the lease.

" A very great deal has been said about forfeitures being odious in law. There are forfeitures that are odious in law; as where a man mortgages his estate, and provides, if he does not pay, the estate shall be forfeited. The jury can see how that would be odious. A man might borrow a small sum of money, and if he did not pay it he would lose his whole estate. The law terms such forfeitures odious because they enable people to take advantage— very unjust advantage. The direct result of such forfeitures is to determine estates, and they are not encouraged by the law. [There are cases where a clause of forfeiture may be needed, as in this

[Brown *v.* Vandergrift.]

case, to prevent estates from being tied up instead of determined; needed to prevent the effect of agreements which would otherwise retard the development of the country. Such forfeitures are not odious, but rather to be encouraged, and this case furnishes an illustration. Brady was to receive $30 a month for a failure to commence operations. The effect of this was to tie up this lease and retard the improvement of that section of country, where, according to the testimony, one well has produced about 16,000 barrels of oil up to about the first of April, and Brady's share would be about 2000 barrels, worth about $2500 or $3000; while under this lease he got $190; the effect is, to retard the improvement and development of the country. We do not think this case comes under the rule laid down in regard to forfeitures which are odious and not to be encouraged by law; and after looking at all the circumstances in the case, we say to you, that that rule does not apply to cases of this kind."]

The verdict was for the defendants.

The plaintiffs took a writ of error; they assigned for error:—

1, 2. The parts of the charge in brackets.

3, 4, 5. The answers to the plaintiffs' fourth, fifth and sixth points.

6, 7. The answers to the defendants' second and third points.

8, 9. The answers to the plaintiffs' seventh and eighth points.

*L. Z. Mitchell* (with whom were *G. W. Fleiger* and *E. S. Golden*), for plaintiffs in error.—Forfeitures are odious and never enforced in equity, especially forfeitures for non-payment of rent: Paschall *v.* Passmore, 3 Harris 306; 18 Viner's Abr. 482; McCormick *v.* Connell, 6 S. & R. 151; Newman *v.* Rutter, 8 Watts 51; Forsyth *v.* Oil Co., 3 P. F. Smith 168; McKnight *v.* Krentz, 1 Id. 234; Lycoming Ins. Co. *v.* Schollenberger, 8 Wright 263; Heil *v.* Strong, Id. 265; Sharon Iron Co. *v.* Erie, 5 Id. 312. The compensation was $30 per month, fixed by the contract, and the parties were bound by it: Harris *v.* Liggett, 1 W. & S. 301. Lambing had the election to forfeit or pay the monthly compensation; having elected to pay rent, the remedy was changed: Layton *v.* Pearce, 1 Douglass 15; Sharon Iron Co. *v.* Erie, *supra*. Lambing was not to seek Brady to pay him; Brady could not forfeit without first demanding the rent: McCormick *v.* Connell, Newman *v.* Rutter, *supra*; Stoever *v.* Whitman, 6 Binney 419.

The reporter received no paper book from defendants in error.

Chief Justice AGNEW delivered the opinion of the court, November 26th 1875.

The discovery of petroleum led to new forms of leasing land. Its fugitive and wandering existence within the limits of a par-

[Brown *v.* Vandergrift.]

ticular tract was uncertain, and assumed certainty only by actual development founded upon experiment. The surface required was often small compared with the results, when attended with success; while these results led to great speculation, by means of leases covering the lands of a neighborhood like a flight of locusts. Hence it was found necessary to guard the rights of the landowner as well as public interest, by numerous covenants, some of the most stringent kind, to prevent their lands from being burdened by unexecuted and profitless leases, incompatible with the right of alienation, and the use of the land. Without these guards, lands would be thatched over with oil-leases by sub-letting, and a farm riddled with holes and bristled with derricks, or operations would be delayed so long as the speculator would find it hopeful or convenient to himself alone. Hence covenants became necessary to regulate the boring of wells, their number and time of succession, the period of commencement and of completion, and many other matters requiring special regulation. Prominent among these was the clause of forfeiture to compel performance and put an end to the lease in case of injurious delay, or a want of success. These leases were not valuable, except by means of development, unlike the ordinary terms for the cultivation of the soil, or for the removal of fixed minerals. A forfeiture for non-development or delay therefore cut off no valuable rights of property, while it was essential for the protection of private and public interest in relation to the use and alienation of property. In the present case the lease was modified by adding immediately after the clause of forfeiture, a stipulation that should the lessee not commence operations at the time specified he should pay to the landlord thirty dollars for each and every month, until such time as drilling should be commenced. The lessee having paid for three months' delay, suffered eleven months to elapse without payment or tender, and then tendered the whole sum, which the landlord declined to accept, and insisted on the forfeiture, he in the meantime having made a new lease to a party who went into possession. The learned judge below held that the lease was forfeited by the omission to pay the monthly sums, the lessee having done nothing in performance of his covenants. We cannot pronounce this to be an error in view of the nature of the lease, the true intention of the clause of forfeiture, and the want of any valuable interest acquired by the lessee, by performance. That time may be made of the essence of the contract by the express agreement of the parties has been so often decided that no citation of authority is necessary. In a case like this equity follows the law, and will enforce the covenant of forfeiture, as essential to do justice. It is true as general statement that equity abhors a forfeiture, but this is when it works a loss that is contrary to equity; not when it works equity and protects the landowner against the indifference and

[Brown *v.* Vandergrift.]

laches of the lessee and prevents a great mischief, as in the case of such leases. To perpetuate an oil-lease for ever by the payment of a monthly sum, as here, at the will or caprice of the lessee, would work great injustice. The covenant of forfeiture was not abrogated entirely, but only modified. Judgment affirmed.