MAY TERM, 1880, No. 231.

# Janes *versus* Emery Oil Company.

1. Defendant leased from the plaintiff a tract of land for the purpose of mining petroleum, and covenanted to commence operations within ten days, to complete a well within four months, "and if a well is not completed within eight months, then this lease is to be void and end. A second well to be drilled upon the farm if the first well is large enough to justify it." Evidence was also given to show a contemporary parol agreement by defendant, not inserted in the lease, to put down wells to develop the land and protect the lines, and to offset the wells put down in adjoining lands. *Held,* that all the agreements, except that with reference to the first well, were mere covenants, and that the breach of any or all of them could not be construed to operate as a forfeiture, to enforce which ejectment would lie.
2. Hamilton *v.* Elliott, 5 S. & R., 375, distinguished.

ERROR to the Court of Common Pleas of *McKean County.*

Ejectment by Heman Janes against Lewis Emery, Jr., and D. McKelvey, doing business under the firm-name of the Emery Oil Company, to recover possession of a tract of land leased by the grantor of the plaintiff to the defendants, because of alleged forfeiture.

Upon the trial of the case in the Court below, before WILLIAMS, P. J., the following facts appeared:

The plaintiff claimed, under a contract of sale made to him January 7th, 1878, by Truman Stoddard and Lydia his wife, for $2500, which sum had been paid.

On the 26th of April, 1876, Stoddard and wife demised the land in question to Lewis Emery, Jr., one of the defendants, for ten (?) years, for the purpose of mining and excavating for petroleum, etc. Emery covenanted to deliver to Stoddard one-eighth of the product, and the latter was to fully use and enjoy the premises for the purposes of tillage. The lease further provided: "The party of the second part (Emery) covenants to commence operations for said mining

purposes within ten days from the execution of this lease, or thereafter pay to the party of the first part ——— dollars per annum until work is commenced, and to complete a well within four months from this date, and if not finished at the time specified, to pay to the first party the sum of fifty cents a day, until the well is finished, for each day of delay after the expiration of the four months; and if a well is not completed within eight months, then this lease is to be void and end. A second well to be drilled upon the farm if the first well is large enough to justify it."

Emery put down a well, which was completed in October or November, 1876. It averaged from five to ten barrels per day, and the royalty was paid to Stoddard. No other wells were drilled on the land.

Plaintiff produced three witnesses, who testified to the effect that, at the time of the execution of the lease, the agreement was that Emery should put down wells to develop the land and protect the lines, and to offset the wells put down on adjoining lands. These terms were not inserted in the lease. The lease was drawn by the attorney for Emery, who read it to Stoddard while the latter held a copy. He read it fast, and Stoddard told him that he could not follow him. The lease was then signed.

Berry, the attorney for the defendant, testified on his behalf that he read the lease the second time to Stoddard, and that, according to his recollection, the conversation as to the development of the land occurred after the execution of the lease.

There was also evidence that the defendant had two oil wells on his own land adjoining the Stoddard farm, on the north, and other parties one on land to the west; and expert testimony that these wells were reducing the value of the farm by taking the oil out of it; and that at least two more wells ought to have been drilled on the farm to protect its lines.

On the 6th of April, 1878, Stoddard drew an order requesting the United Pipe Line to transfer the royalty, after April 1st, to Janes, the plaintiff.

They went together to Emery to get his consent to the transfer. He refused, and said of Janes: "Let him get his oil, if he can. I will never give him a barrel."

This action was commenced April 12th, 1878. Counsel for plaintiff asked the Court to charge:

1. That if the jury believe that, contemporaneous with the execution of the written lease, there was a parol agreement made by defendants with Stoddard, providing for the drilling of a sufficient number of wells on the leased premises to

develop the land, and to protect the same for oil purposes, within a reasonable time, it was the duty of Emery to carry out said agreement, without which he acquired no title to the land for oil purposes, and the plaintiff is entitled to recover.

2. That if the jury believe that Stoddard and wife were induced to sign this lease by the promises of Emery to develop the land for oil purposes, and to put down a sufficient number of wells to protect the same from wells on contiguous territory, that a neglect and a refusal to carry out such promise would be a fraud, and vitiate the lease so obtained.

3. That the true construction of a lease for oil purposes, without any special covenants therein expressed is, that property so leased shall, within a reasonable time, be worked, and oil produced on so much of the land as is capable of producing oil in paying quantities.

4. That this lease is a license to occupy the land for oil purposes, and the right to retain possession is dependent upon the performance of the agreement to produce oil according to the terms of said agreement.

5. That a refusal to pay the royalty to the owner of the soil is a forfeiture of the right to occupy the land in controversy.

The Court charged the jury, *inter alia*, as follows:

"If this question of what the contract was is submitted to you, and you should find that the lease reads just as the plaintiff alleges it ought to read, we still think that, upon the provisions of this agreement, the plaintiffs have brought their action prematurely. The only condition or stipulation in this lease which looks towards a forfeiture, is that which relates to the first well. The lessee agrees to put down the first well in four months, and if not finished in eight months, his estate is defeated. Beyond that the penalty for this failure to perform is not stated. If Emery agreed to do what was necessary to protect the lines, he ought to have done it. He ought, at least, to have put down the second well provided for in this lease, and the eight months in which this well should have been put down expired on the 26th day of December, 1876. This suit was brought in about fifteen months afterwards. During this time this well was producing and the royalty regularly paid to Mr. Stoddard, who was in possession. The evidence does not disclose that Mr. Stoddard thought or communicated to Mr. Emery that any further work was necessary on that lease. There was no request on his part to proceed with the development of the land, or notice that other wells were needed along the line to protect

the land. Therefore there was no refusal on the part of Emery, except that which grows out of the single circumstance that these wells were not put down during the period of fifteen months. If Mr. Emery's attention had been called to this, and he had expressly declared, ' I am not going to perform this lease,' there might have been something to submit to the jury. But Mr. Emery put down the first well contemplated by this agreement; he has continued to deliver, or did, until about the time of bringing this action, the royalty realized; and while it may be that an action upon these covenants may not be an adequate remedy, yet the plaintiff very clearly had a right to such an action; and we are inclined to hold that if he brings an action of ejectment, instead of relying upon these covenants, he ought to notify his lessee to proceed to perform the covenants relating to development, or he will elect to treat the contract as at an end. For this reason we are of the opinion that the plaintiff is not entitled to recover. We come to this conclusion very reluctantly. We have tried to see our way to a submission of this case to the jury, but we cannot give this question to the jury.

" Under the view that we entertain, gentlemen, there is nothing for the jury in this case. We have disposed of the case upon this legal question. We will therefore direct the clerk to take your verdict from the box in favor of the defendant."

The Court answered the points submitted by the plaintiff's counsel as follows:.

1. This, in the language in which it is put, we deny. Mr. Emery had acquired title to this land by the drilling of the first well, according to the terms of the agreement; and that title could only be divested by legal proceedings based upon non-performance or a refusal to perform some other portion of the contract.

2. It would be a fraud, but we are not prepared to state, on the evidence in this case, a forfeiture of the lease would necessarily follow, the first well having been completed in accordance with the lease.

3. We think that is correct. But the mode of enforcing a covenant of that kind is a question upon which we are not required by this point to express an opinion.

4. This fourth point we charge qualifiedly. Our answer to this is, that this lease was a license to enter until after the first well was down; the instrument then took effect as a lease, and Mr. Emery was bound, in accordance with its terms, to render the royalty agreed.

5. There being no evidence which we feel justified in sub-

[Janes *v.* Emery Oil Company.]

mitting to the jury on that question, we do not feel called upon to give any expression upon the point.

Plaintiff excepted to the charge and answers to the points.

Verdict for defendants, upon which judgment was entered.

The plaintiff then took out a writ of error, assigning as error the answers and charge as above set forth.

*W. B. Chapman & Son, C. B. Curtis,* and *John P. Vincent* for plaintiff in error.

If Emery, at the time he obtained this lease upon the faith of the contemporary parol agreement, did not intend to perform it, it was secured by fraud; and if afterward he neglected to protect the line and develop the land, it is no less a fraud: Coal Co. *v.* McShain, 25 P. F. Smith, 245.

Notice to defendant of non-performance or forfeiture was not necessary, agreements for concurrent occupancy being always construed as conditional: Hamilton *v.* Elliott, 5 S. & R., 375; Sheaffer *v.* Sheaffer, 1 Wr., 525.

Destroying the value of the land is such a fraud that receiving the royalty would not confirm the lease: McHugh *v.* County of Schuylkill, 17 P. F. Smith, 396; Chamberlain *v.* McClurg, 8 W. & S., 36.

The omission from a written contract of a verbal promise, which was the inducement for its execution, is a fraud: Graver *v.* Scott, 30 P. F. Smith, 94; Greenawalt *v.* Kohne, 4 Norris, 369.

*Berry & Elliott* and *A. G. Olmstead* for defendants in error.

Ejectment to recover the land cannot be maintained though covenants are broken: Soper *v.* Guernsey, 21 P. F. Smith, 223; Perry *v.* Scott, 1 P. F. Smith, 119; Garver *v.* McNulty, 3 Wr., 473; Cook *v.* Trimble, 9 Watts, 15.

Evidence of fraud or mistake should be clear, precise, and indubitable: Stine *v.* Sherk, 1 W. & S., 195; Miller *v.* Smith, 9 Casey, 386; Martin *v.* Berens, 17 P. F. Smith, 459; Brawley *v.* The United States, 6 Otto, 173.

PER CURIAM: The case of Hamilton *v.* Elliott, 5 S. & R., 375, so much relied on by the learned counsel of the plaintiff in error, was a grant upon an express condition. It was held that, upon breach, the estate reverted without the necessity of re-entry, as the grantor was in possession. There was but one condition in the lease in this case,—that the lessee should commence a well in ten days and complete it in four months, but if not completed in eight months the lease should be forfeited. All the other agreements, both those in the writing and those set up by the parol evidence,

[Blair *v.* Peck *et al.*]

offered and received as contemporaneous, were mere cove-
nants, and the breach of any or all of them could not be con-
strued to operate as a forfeiture. The answers of the learned
judge to the points, and his instructions to the jury, give the
plaintiff no good ground of complaint.

Judgment affirmed.