## Blair *versus* Peck *et al.*

1. In a lease of an oil tract the lessee covenanted and agreed " to continue with
due diligence and without delay to prosecute the business to success or aban-
donment, and, if successful, to prosecute the same without interruption for the
common benefit of the parties aforesaid." A later clause provided that " the
party of the second party covenants to drill and have a well ready for pumping
within six months from this date, and commence operations within thirty days
from the date of this instrument. If said second party shall cease operations
at any time for the term of three months, it shall work a forfeiture, and said
first party shall have the right and privilege to take full possession, as if this
lease had never been made. Time is the essence of this contract." *Held*, in
an action of ejectment by the lessor to recover possession, one well having
been drilled within six months, and there being no cessation of operations
as to it, that a neglect to drill other wells during a period of two years did
not work a forfeiture of the lease.

2. The remedy for any breach of the covenant to prosecute the business for
the common benefit is not by ejectment, but by an action of covenant.

ERROR to the Court of Common Pleas of *McKean County.*

Ejectment by James E. Blair against L. G. Peck, Wesley
Chambers, J. T. Jones, L. F. Freeman, John M. Coburn, and
the Bradford Oil Company (Limited), to recover possession
of a tract of land in said county, leased by plaintiff to L. G.
Peck, one of the defendants, upon the ground of alleged for-
feiture.

Upon the trial before WILLIAMS, P. J., plaintiff proved
the following facts:

The plaintiff and Peck entered into an agreement, July
17th, 1875, by the terms of which the former leased to the
latter his farm of one hundred and fifty-four acres, more or
less, Peck to have the sole and exclusive right to bore for
oil, salt, water, coal, iron, minerals, etc., and gather and col-
lect the same for twenty years from the date of the agree-
ment, for which he was to pay the plaintiff one-eighth part
of all the product. The material portions of the agreement
were as follows:

" The party of the second part covenants and agrees at all
times to permit the party of the first part, or his agent, to
enter the premises for the purpose of inspecting the opera-

tions, examining the books, and ascertaining how much oil has been pumped, or other product obtained; and also to continue with due diligence, and without delay, to prosecute the business to success or abandonment, and, if successful, to prosecute the same without interruption for the common benefit of the parties aforesaid.

" And the party of the second part, for himself, his heirs, executors, administrators, and assigns, further covenants and agrees with the said party of the first part, his heirs, executors, administrators, and assigns, that, upon the completion of the drilling or boring of any well upon said premises, the same shall be immediately tubed and seed-bagged below the lowest fresh water vein or course therein, in a proper manner to exclude the surface or fresh water from the lower part of such well, and thoroughly pumped and tested for oil; and that the party of the second part, his representatives, assigns, or those holding through, under, or for him, shall not at any time remove the tubing or seed bag from any well on said premises in such a manner as to affect or interfere with the flowing or production of oil from any other well, without the consent of the said party of the first part, his representatives, assigns, or the person or persons holding interests under or through said first party; and that all wells on said premises shall at all times be kept tubed or seed-bagged, as above provided for, in such a manner as to exclude the surface or fresh water from the lower part thereof. The party of the second part covenants to drill and have a well ready for pumping within six months from this date, and commence operations within thirty days from the date of this instrument. If said second party shall cease operations at any time for the term of three months, it shall work a forfeiture, and said first party shall have the right and privilege to take full possession as if this lease had never been made. Time is the essence of this contract."

The lease was soon afterwards assigned to defendants, who entered into possession under it. They commenced drilling about the close of July, 1875, and finished a well about the last of the succeeding October. It produced from ten to thirty-five barrels of oil a day, and was at first a flowing well, but was afterward pumped. In May or June, 1876, the defendants drilled another well, which was a pumping-well, and produced, the plaintiff testified, rather more than the first. Nothing else was done in the way of drilling for oil down to the time of the commencement of this suit, September 6th, 1878. Testimony was given to show that wells for oil were in the meantime drilled by the Bradford Oil Company and others on lands surrounding the farm in ques-

[Blair *v.* Peck *et al.*]

tion, and so near to it as to draw the oil from it.   Plaintiff
received his proportion of oil from the wells drilled.

January 12th, 1877, the plaintiff served a written notice
on the defendants, requiring them to commence within sixty
days three wells in described localities on the farm, and
"also to continue with due diligence, and without delay, to
prosecute the business of boring for oil on said Blair farm,
for the common benefit of both parties, in accordance with
the stipulations and conditions of a lease or contract, dated
July 17th, 1875, . . . or else abandon said Blair farm, so
that said Blair may prosecute said work, and protect his
interests."

The Court directed a judgment of nonsuit to be entered,
and subsequently discharged a rule to strike it off the record.

The plaintiff took out a writ of error, assigning as error
the refusal of the Court to set aside the judgment of non-
suit.

*R. Brown, B. D. Hamlin, A. G. Olmsted, G. A. Berry,* and
*M. F. Elliott* for plaintiff in error.

According to the view taken by the Court below, the de-
fendants, having drilled the one well within six months from
the date of the lease, and not having neglected or refused
for three months to receive the oil flowing therefrom, had
not forfeited their rights under the lease, though they had
refused for two years to proceed to develop the farm as
agreed upon.  If this is correct, they could hold the pos-
session, without doing more for the entire period of the lease,
and destroy the value of the farm for oil purposes.

If plaintiff cannot recover in ejectment, he is without rem-
edy.   The damages could not be ascertained in covenant.

Independent of the express covenants in the lease, where
a lease is made for oil purposes only, and for a limited time,
it is apparent that the parties contemplate a full and com-
plete development of the lands.

The clause providing that the work shall be prosecuted
with due diligence without interruption has no reference to
the first well, nor does the clause providing that if the
lessee shall cease operating for three months the lease shall
be forfeited, refer to that well.  The purpose of these clauses
was to insure continuous development after it had been ascer-
tained that the farm contained oil in paying quantities.

Time was made of the essence of the contract: Brown *v.*
Vandergrift, 30 P. F. Smith, 148.

*J. B. Brawley* and *Henry King* for defendants in error.

The plaintiff claims that the clause providing for a prose-

cution of the business without interruption means the constant sinking of wells, and that the clause created a condition, the breach of which worked a forfeiture. No just construction can place such meaning upon the words or convert it into a condition, much less a condition the breach of which would work a forfeiture : 2 Cruise on Real Property, 2 ; 4 Kent Com., 130 ; 1 Wash. Real Prop., 316 ; Paschall *v.* Passmore, 3 Harris,•307 ; McKnight *v.* Kreutz, 1 P. F. Smith, 232.

To limit the word " operations " to mean only " sinking wells " would give the word a narrow and restricted meaning in favor of the lessor. That construction would lead to absurd results : Rynd *v.* Oil Co., 13 P. F. Smith, 402.

Per Curiam : The lease in this case contained these provisions : " The party of the second part covenants to drill and have a well ready for pumping within six months from this date, and commence operations within thirty days from the date of this instrument. If said second party shall cease operations at any time for the term of three months, it shall work a forfeiture." A previous covenant provided that " if successful " he should " prosecute the business without interruption for the common benefit of all the parties." It is not denied that the well had been drilled, and that it was in operation without ceasing, but it was contended that the defendant was bound to drill and operate other wells so as to prevent the oil from being exhausted by wells on contiguous property. This might have been provided for by conditions similar to the one recited, but in their absence the learned judge was entirely right in holding that there was no forfeiture. The remedy on the covenant to prosecute the business for the common benefit was not by ejectment, but an action of covenant.

Judgment affirmed.