## McCray v. Harris et al.

W. J. Sirdevan, for plaintiff.

Thomas & Thomas and C. W. Benedict, for defendants.

PRATHER, P. J., Dec. 19, 1927.—This action was begun in ejectment to recover from defendants a leasehold estate to explore for oil on twenty acres of land in Oil Creek Township, County of Crawford, and, according to the præcipe filed, excepting from the description of the said twenty acres "such part (thereof) as is within three hundred feet of a well formerly drilled on said premises."

When this case was called for trial, counsel for plaintiff and defendants agreed to submit it upon stipulated facts as a case stated to determine the following legal question: "If the court is of the opinion that the plaintiff, George R. McCray, is vested with a good leasehold title for the purpose of operating for oil and gas in and to the land in question, then judgment to be entered in favor of the plaintiff and against the defendants for the land described in the writ, but if the court is of opinion that the said plaintiff is not vested with a good leasehold title for the purpose of operating for oil and gas, then judgment to be entered for the defendants. The costs to follow the judgment and both the plaintiff and the defendants reserving the right to take an appeal to the Supreme or Superior Court."

In the case stated, the facts stipulated may be summarized as follows:

1. That Marvin Weed and wife, on June 20, 1905, leased to P. K. Sloan, by written indenture, 100 acres, which included the above twenty acres, for the purpose of prospecting for gas "for the term of ten years and as much longer as oil and gas is found in paying quantities." Said lease required lessee to drill four wells upon this 100-acre lease within a specified time, which requirement was complied with and resulted in the production of oil in paying quantities from each of the four wells.

2. On or about Nov. 4, 1905, P. K. Sloan, lessee, assigned all his rights and interest in said leasehold to Elmer E. Harris, one of the defendants herein. On or about Nov. 15, 1912, the said Elmer E. Harris assigned eighty acres of this 100-acre leasehold, retaining twenty acres, comprising the leasehold here in controversy. One of the four wells hereinbefore mentioned drilled on the 100-acre lease is located on this said twenty acres. This well has at all times since its drilling in been pumped by lessee and producing oil in paying quantities, and the royalty thereon has been regularly and continuously turned over to lessor, even at the present time. Lessee, besides drilling and operating this one well, made no other exploration for oil upon this leasehold of twenty acres until October, 1923.

3. Marvin Weed and wife, by lease dated Oct. 8, 1923, demised and let for oil and gas purposes the twenty acres of land involved in this action to the plaintiff, George R. McCray, and in said lease it is provided that "second party agrees not to drill any wells within three hundred feet of the one well that is drilled and pumping now on the said twenty acres." Thereupon plaintiff entered upon said twenty acres for the purpose of operating for oil and gas, whereupon defendants moved a drilling outfit upon the said tract, excluded plaintiff therefrom and proceeded to drill in a second well, which is now operated for the production of oil and gas. This suit was instituted Oct. 23, 1923, or fifteen days after plaintiff became lessor by said assignment.

4. Operations for oil and gas, at the present time and for a long time prior to the bringing of this action, have been prosecuted on the lands adjoining the twenty acres in question on all four sides, and oil and gas have thus been produced on adjoining leases by the use of suction pumps, resulting in reduction within said sand of the natural pressure of oil, gas and fluids contained thereunder. Quoting from the stipulated facts: "Prior to the date upon which the plaintiff obtained the lease for oil and gas purposes on the said twenty-acre tract, his lessor had requested the defendants to drill additional wells on said twenty-acre tract to protect the oil and gas under said land from being drawn out and produced by those persons operating upon the adjoining premises."

5. At the time of the bringing of this action, defendants were in possession of the property in controversy.

6. Said lease, after providing for the drilling of the hereinbefore-mentioned four wells and specifying its tenure "for the term of ten years and as much longer as oil and gas is found in paying quantities," provided: "And a failure to commence and complete the drilling of any well or wells, or to pay any rental hereinbefore mentioned within the time limited for the same, shall render this lease null and void, and is equal to a surrender and cancellation of the same, notwithstanding any law, usage or custom of the contrary."

The general questions involved in the discussion of the matter submitted are forfeiture and abandonment and whether the stipulation in the case stated sustains either of these.

In general, it may be stated that all facts not contained in the case stated must be assumed not to exist and the consequences must fall on the party having the burden of proof: Addyston Pipe and Steel Co. *v.* City of Corry, 197 Pa. 41.

In Schuylkill County *v.* Shoener, 205 Pa. 592, 597, the Supreme Court held: "A case stated should contain a clear statement of the facts agreed upon which give rise to the question presented for decision, and nothing should be left to inference. In deciding the case, the court is confined to the specific facts stated. Whatever is not distinctly and expressly agreed upon will be taken not to exist, and it is error to base a judgment on facts not set forth: Ford *v.* Buchanan, 111 Pa. 31; Mutchler *v.* Easton, 148 Pa. 441; Loux *v.* Fox, 171 Pa. 68."

This rule is applicable to the facts submitted in two particulars. Plaintiff must place stress upon the fact that lessor, some time prior to Oct. 8, 1923, had requested lessee to drill additional wells. This is a bald stipulation without any embellishment as to any particular time when such request was made or any assertion as to lessee's reply thereto. Oct. 7, 1923, would satisfy the time mentioned as prior to Oct. 8, 1923. After stating that plaintiff had obtained the lease Oct. 8, 1923, the stipulation continues: "Thereupon plaintiff . . . entered upon said twenty acres."

From these stipulations we do not know, we cannot infer, nor does it follow, that lessee defaulted after lessor requested him to drill more wells. If such request upon the part of lessor was necessary before he could declare a forfeiture, then definiteness in its averment is lacking and proof that lessee did not respond to this notice is wholly wanting. As such request could have been made on Oct. 7th, lessee's conduct of moving his drilling outfit upon the twenty acres and proceeding to drill may have been a direct affirmative response to said request, and may have been as early as Oct. 8 or 9, 1923. It follows that such request can have no legal significance against defendant, the lessee, in support of plaintiff's contention that the lease was either forfeited or abandoned.

Plaintiff, in his præcipe, describes the twenty-acre lease, but excepts therefrom the first well thereon, together with "such part as is within three hundred feet of a well formerly drilled on said premises." It is to be observed that the facts submitted are entirely silent and void of any illumination as to why plaintiff adopts as the boundaries in his præcipe a limitation of 300 feet from said well. Why not have said 3000 feet as well as 300 feet?

We have referred to the first indefinite assertion of fact and the second abstract and inferential one as abstract and inferential because not corelated with any evidential fact, stipulation or conclusion pertaining to the issue for the purpose of noting that, in our opinion, they have no significant value in support of plaintiff's principal contention of forfeiture or abandonment.

It follows that the search for forfeiture or abandonment must be limited to the covenants in the lease, express or implied, considered with the relevant

facts of a single producing oil well on a twenty-acre leasehold, operated for sixteen years and now in operation, and paying to lessor his royalty without any unheeded complaint that lessee had not·further continued his exploration, with productive oil leases on the four sides of this twenty-acre leasehold, operated and pumped by means of suction tending to reduce the pressure of oil and gases in the sands underneath said adjoining leases.

From plaintiff's exhaustive brief, it is not quite clear whether he is stressing forfeiture or abandonment. We will proceed to the consideration of abandonment. In Aye v. ·Philadelphia Co., 193 Pa. 451, 456, the Supreme Court stated the law of abandonment as follows: "Abandonment is a question of fact to be determined by the acts and intentions of the parties. An unexplained cessation of operations for the period involved in this case gives rise to a fair presumption of abandonment, and standing alone and admitted would justify the court in declaring an abandonment as matter of law. But it may be capable of explanation and is, therefore, usually a question for the jury on the evidence of the acts and declarations of the parties: Stage v. Boyer, 183 Pa. 560. It should have been so left to them in this case."

In McMillin v. Titus, 222 Pa. 500, 511, the Supreme Court said: "Abandonment ordinarily is a question of fact to be determined by the jury under all the circumstances of the case. There must be an intention to abandon as well as an actual abandonment of the property, and usually it is necessary for the jury to determine these facts. . . . There was no testimony offered on the part of the plaintiffs in contradiction of the testimony offered by the defendant to establish the abandonment."

We have found no authority where abandonment has been successfully urged against a mining lessee who has complied with every expressed covenant in his lease to the successful and continuous production of the mineral explored for, and who has continuously at regular intervals and to the apparent satisfaction of his lessor paid or delivered the stipulated rent or royalty to said lessor.

We say to the apparent satisfaction of lessor advisedly, because of the facts submitted, there is lacking any definite stipulation to the contrary, and, this being true, the fact of his receipt of his share of the oil as produced during sixteen years, inclusive of the present, furnishes abundant evidence that neither he nor his lessee ever considered any part of said leasehold abandoned.

In our opinion, the essential elements of abandonment are lacking. Lessee's continued production of oil, though from a single well, and lessor's acquiescence in, and apparent approval of, this limited operation evidence their mutual understanding that their lease was continuing in full life.

In Highfield Co. v. Kirk, 248 Pa. 19, a proceeding in equity, wherein it was pleaded that lessee, on a thirty-five-acre leasehold, had in sixteen years drilled but one well thereon, which was operated and productive during this time, but had refused to further explore, though often requested so to do by his lessor, and the facts so pleaded were admitted by respondent, lessees, the court held that this was an abandonment of the lease, except so much thereof as was necessary for the operation of one well. The syllabus expresses the holding of the court: "Where the lessee under an oil and gas lease drilled one well and for a period of sixteen years thereafter failed to explore the premises further, and had no intention of drilling any additional wells, in a proceeding in equity to require the lessee to develop or abandon the premises, the court properly decreed that the defendants had abandoned their interest in the demised premises, except such curtilage as was necessary to operate the one well."

Kleppner *v.* Lemon, 176 Pa. 502, was a proceeding in equity to compel defendant to put down wells. In this case lessee had put down a single well upon the leasehold in question, refused to drill more, but prospected on an adjoining lease within 157 feet of plaintiff's property, securing wells thereon, and was also engaged in putting down other wells within 250 feet of plaintiff's line. It was shown that, due to the nature of the rock, the manner of operation and the nearness of defendant's new explorations to plaintiff's well, oil was being drained from said lease to lessor's detriment.

Under these facts, the Supreme Court, in affirming the judgment of the trial court, directed defendant to proceed at once to drill and operate another well on plaintiff's land as follows: "It is further ordered that if the defendant does not within ten days after notice of this decree file in this case a declaration setting forth that he will put down another well on said land near the north end thereof and begin the same within twenty days thereafter, and prosecute the same to completion with all reasonable diligence and in good faith, his leasehold estate in said land shall be deemed to be abandoned except as to the well known as Kleppner No. 1 and a space of 300 feet around it on all sides, and the right of way, etc., incident thereto."

The procedure and the judgment of the court in the last two authorities cited are directly in harmony with the doctrine that equity abhors a forfeiture (Brown *v.* Vandergrift, 80 Pa. 142), and that the law is slow to enforce a covenant of forfeiture unless such forfeiture is essential to justice. In other words, where forfeiture is invoked against a covenantor and the contract has been in good faith partly executed, and its partial performance having been acquiesced in by the covenantee for a period of years, and the forfeiture of the contract would work an injustice to the covenantor, without any essential advantage to covenantee, equity will permit and require performance, if good faith has thus far been shown, upon the part of the covenantor, rather than declare a forfeiture.

While the action before us is ejectment, it is still a procedure requiring equitable consideration: Brown *v.* Vandergrift, *supra.* A judgment in such a proceeding may be entered for defendant, without prejudice to plaintiff, to take such other action as may result in a modified judgment, to the end that lessor may declare a forfeiture and obtain possession of the leasehold: Cassell *v.* Crothers, 193 Pa. 359, 366, 369.

In Thompson *v.* Christie, 138 Pa. 230, 249, the Supreme Court, in discussing forfeiture, said: "The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved; that the proof of the happening of the event on which the right is to be exercised must be clear; that the party entitled to do so must exercise his right promptly; and that the result of enforcing the forfeiture must not be unconscionable."

In Craig *v.* Cosgrove, 277 Pa. 580, 584, the Supreme Court, speaking of the lease then under consideration, said: "Here, the lease bound the lessee as well after as before Oct. 1, 1920; it was still his duty to drill the first well, and, having entered into a contract for that purpose, thereby incurring expense and obligation, and the contract having been partly executed, the attempted exercise of the option to forfeit, made nearly three months after the alleged breach, came too late: Lynch *v.* Gas Co., 165 Pa. 518, 521."

Plaintiff, in the case under consideration, seems to assume that the lease in question has become automatically forfeited because of lessee's failure to perform its implied covenants, ignoring lessor's conduct and disregarding the peculiar facts that contributed to or induced such non-performance. We cannot assent to this contention.

The authorities cited, wherein judgments of forfeiture were entered, contained one of the following conditions:

1. An absolute default to comply with an express covenant or a wilful violation thereof: Kelly v. Phillips Gas and Oil Co., 262 Pa. 412.

2. Refusal to comply with a necessarily implied covenant after notice so to do: Kleppner v. Lemon, supra.

3. The happening of the condition that terminated the contract, as the drilling of a dry hole and cessation of operation: Aye v. Philadelphia Co., 193 Pa. 451, 456, supra.

4. When, in an oil lease, oil is not produced in paying quantities, that condition expressing the tenure of the lease: Cassell v. Crothers, supra.

For lessee's mere failure to keep implied covenants, after his faithful, continuing and successful compliance with all express covenants, we have found no authority that sanctions lessor's summary declaration of forfeiture, without previous notice of such intention in the event of such continuing failure. Especially is this doctrine of abhorrence to such forfeiture pronounced against lessor, who through a long period of years acquiescently receives the fruits of the covenants thus executed, and now suddenly without notice invokes a new program of performance not "nominated in the bond."

When compliance with express covenants can be waived by covenantors merely by their conduct in relation thereto, how much more are implied ones susceptible of such waiver.

In Craig v. Cosgrove, 277 Pa. 580, 584, the Supreme Court held:

"A forfeiture clause for non-payment of rent or for failure to fulfill a covenant for drilling wells in an oil and gas lease is for the benefit of the lessor and is enforceable only at his option: see Jones v. Natural Gas Co., 146 Pa. 204; Wills v. Manufacturers Natural Gas Co., 130 Pa. 222. Such a covenant is not self-enforcing: Westmoreland Natural Gas Co. v. De Witt, 130 Pa. 236. The right to insist upon time as the essence of a contract may be waived expressly or by necessary implication: Welsh v. Dick, 236 Pa. 155; Vankirk v. Patterson, 201 Pa. 90; and see Brodsky v. Bell, 79 Pa. Superior Ct. 36; also, Pomeroy's Specific Performance of Contracts (2nd ed.), § 394.

"As such a forfeiture clause is operative only at the option of the lessor, the lease continues a valid obligation until he declares it forfeited, and unless he acts promptly his right to do so is gone."

Where the natural effect of lessor's conduct is to lead lessee into the belief that lessor is satisfied with a continuing status or condition, lessor will not be allowed to enforce a forfeiture because it would be inequitable: Steiner v. Marks, 172 Pa. 400; Duffield v. Hue, 129 Pa. 94.

We are not at all ignoring the consistent authorities, McKnight v. Natural Gas Co., 146 Pa. 185, 200; Hamilton v. Foster, 272 Pa. 95; Kleppner v. Lemon, supra, and kindred ones, to the effect that an oil lease, with reference to its operation and prosecution, must be interpreted with reference to the fugacious characteristics of such fluids, whether or not such prosecution and extended exploration be covenanted in the lease. We are simply insisting that, in harmony with all the authorities, the equitable rule be applied to this attempted forfeiture.

In Venture Oil Co. v. Fretts, 152 Pa. 451, 460, discussing the estate of a lessee in an oil lease, the Supreme Court said: "The title is inchoate and for purposes of exploration only until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a

vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract."

In Calhoon v. Neely, 201 Pa. 97, the Supreme Court said: "A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. . . . Whether there was an abandonment here, as in all similar cases, was a question of intention to be determined in the light of the conduct of the lessees."

In Stoddard v. Emery, 128 Pa. 436, the Supreme Court held, as expressed in the syllabus: "If the parties to a demise of lands for oil and gas purposes have provided therein, by express terms, how many wells shall be put down, no implication can be raised that any greater number are to be drilled in accordance with a custom for the most effective operations." See, also, Blair v. Peck, 1 Pennyp. 247; Janes v. Emery Oil Co., 1 Pennyp. 242.

We do not find that the doctrine laid down in the Stoddard v. Emery case has ever been expressly dissented from by our Supreme Court, while that of the last two cases was cited by the Supreme Court in Kleppner v. Lemon, supra, 511, with apparent approval.

It seems to be urged that lessor is justified in declaring a forfeiture for three reasons:

1. Lessee's failure to continue his exploration for oil, beyond the pumping and producing of oil from one well, for a period of about sixteen years.

2. His continued failure to explore after lessor's notice so to do.

3. The dissipation, depletion and waste of lessor's interest due to said failure, especially as affected by the continued production and pumping of oil on leaseholds adjoining all sides of this twenty-acre lease.

We have already answered the arguments raised with reference to Nos. 1 and 2. As to No. 3, we may call attention to the fact it does not appear, and we cannot find, that the operation of leases and the production of oil from the four sides of the lease in controversy tend toward the dissipation of any oil or gas under or belonging to plaintiff's lease. True, we have in the stipulation of facts that the operation of said adjoining leases and the manner of pumping oil therefrom tends to reduce the natural pressure of gases and fluids under said leases. But we have no facts, relating to the operations upon leases adjoining to the one in controversy, more clearly or definitely than is implied in the term "adjoining." For all the stipulation shows, these operating wells may be a half a mile or a mile distant from this twenty-acre lease. To find injury to plaintiff's lease arising from such operations, based upon such indefiniteness of averment, both as to proximity and as to damage, is to find it not from facts but from merest inference.

We make the following findings:

1. That defendants have fulfilled every express covenant contained in said lease.

2. Performance of implied covenants to continue exploration for oil and putting down additional wells have been postponed and waived by common understanding between the parties.

3. Such implied covenants cannot be enforced without due and timely notice to lessees to proceed with such exploration.

4. No such notice was given in this case.

5. The right to proceed with such exploration has not been forfeited in this case.

6. The right to proceed with such exploration has not been lost by abandonment. .

It follows that judgment should be entered in this case in favor of the defendants for the twenty-acre leasehold without prejudice to the future rights of plaintiff.

### Order.

Now, Dec. 19, 1927, judgment is entered in favor of defendants for the leasehold comprising the twenty acres described in plaintiff's præcipe, and the producing well excepted from said description, together with costs, without prejudice to plaintiff to take such other action as may hereafter be required, if the law so justifies, to require defendants herein or lessee in said lease to continue said operations and explorations for the purpose of producing oil and gas, as contemplated by said lease.

From J. Perry Eckels, Meadville, Pa.