## Manufacturers Casualty Ins. Co. v. Merchants Parcel Delivery, Inc.

*Conard & Middleton*, for plaintiff; *Arthur S. Arnold*, for defendant.

LEWIS, J., January 30, 1932.—The insurance premium which the plaintiff insurance company sought to recover in this action of assumpsit was earned upon a policy of workmen's compensation insurance issued by the plaintiff. On December 12, 1929, one Walter C. Dilkes, a licensed insurance broker, deposited with the plaintiff company the following order, directed by the defendant insured to the plaintiff: "This letter will authorize Walter C. Dilkes as our agent in the renewal of our 1930 compensation insurance." The plaintiff mailed the policy in question on December 16, 1929, directed to the defendant, together with a bill for the "estimated advance premium." Upon receipt by the defendant of the policy, the defendant mailed it to Dilkes, who thereafter issued his own bill for the amount of the "estimated advance premium" to the defendant, returning the workmen's compensation policy therewith. The defendant company shortly thereafter paid to Dilkes the amount of the "estimated advance premium," to wit, $514.85. Dilkes, in turn, on February 13, 1930, delivered to the plaintiff company his check for all of the "estimated advance premium," less 10 per cent. brokers' commission of $51.49, which he

deducted. The following letter, addressed to the plaintiff, accompanied the check:

"In re Merchants Parcel Delivery, Policy No. C-22099.

"Enclosed please find my check, No. 11471, drawn to your order in the amount of $463.36, covering the above-mentioned policy.

"Under date of December 12, 1930, I presented to you a letter in person from Mr. Adams, Treasurer and Manager of the Merchants Parcel Delivery, authorizing me to be recognized as the agent and broker for all of his renewal insurance, including his compensation policy, as specifically set forth in the letter referred to above."

The check enclosed bore the following notation: "This check pays in full the following account. If incorrect please return. Date Invoice Disc. Amount Merchants Parcel Delivery No. C-22099.

"No receipt required."

The check was cashed by the plaintiff on February 15, 1930. On February 20, 1930, plaintiff advised Dilkes that he was not entitled to deduct the commission on the premium due upon the policy in question and requested that the balance of the premium be paid. Dilkes did not comply with the request, and the plaintiff canceled the policy on September 6, 1930. An audit was made of the defendant's payroll for the period covered by the policy and revealed a total premium earned of $368.74. Against this amount the plaintiff credited the defendant with the amount of the check received by it from Dilkes, leaving a balance of $105.38, for which this suit was brought. The defendant assured maintained that it was entitled to the sum of $75 as and for a distribution of surplus during the time the said policy was in force and effect (in accordance with provisions of section N thereof); and that the sum received from Dilkes, to wit, the sum of $463.36, the 10 per cent. commission retained by Dilkes, to wit, $51.49, and the sum of $75, the proportion of surplus due the assured, in the aggregate amount exceeded the sum of $568.74, the amount due as shown by the audit. No claim, however, was made by the defendant for the difference.

The facts of the case, as developed upon the trial, present the following questions:

1. Was Walter C. Dilkes an insurance broker acting for and on behalf of the defendant in the defendant's transaction in connection with the policy of insurance sued upon?

2. Even though there might have been a dispute and misunderstanding with respect to the relationship of Dilkes to the said transaction, did the receipt, cashing and retention of the check of February 15, 1930, estop the plaintiff from claiming the sum of $51.49, which had been deducted by Dilkes as his commission?

3. Was the payment on February 13, 1930, in full of the amount then due from the defendant to the plaintiff?

4. Is the defendant entitled to a credit of $75 in pursuance of the provisions of section N of the policy?

With reference to the first query, the evidence disclosed that the former broker of the defendant was E. M. Tissot, and that the defendant no longer desired to have Tissot represent it. Dilkes was designated its agent by the letter above referred to. There is no question that Dilkes was an insurance broker and that he carried the order to the plaintiff company. Was the policy of insurance issued by the plaintiff company as a result of the order? In other words, did he "place the policy?" Was he because of that entitled to his commission?

The situation is complicated by reason of the fact that the plaintiff company on the face of it ignored the order which had been delivered by Dilkes to it in December of 1930, sent the policy in question direct to the defendant, together with a bill of E. M. Tissot for the "estimated advance premium." Up to this point it is not quite clear that the plaintiff company had recognized Dilkes as the broker in the transaction. Does the payment of February 13, 1930, accompanied by the letter addressed to the company, help to solve and determine the relationship between the insurance company and Dilkes? Even though there might have been a dispute and misunderstanding with respect to the relationship of Dilkes to the transaction, did the receipt, cashing and retention of the check estop the plaintiff from claiming that the commission of $51.49 was improperly deducted? Superficially, there was no dispute between the plaintiff and defendant. The dispute was really between the plaintiff and Dilkes. The check which the plaintiff received and retained was not the check of the defendant but the check of Dilkes.

The general rule that part payment of a liquidated indebtedness is no consideration for the discharge of the entire debt: Bernstein v. Hirsch, 33 Pa. Superior Ct. 87, and Washington Natural Gas Co. v. Johnson, 123 Pa. 576; was a deduction of strict scholastic logic, and has been by many learned authorities regarded as technical and unjust. There seems to be a modern tendency to enlarge the exception to this rule in order to avoid its harshness and to carry into effect settlements, adjustments and compromises, and one of these exceptions is where the part payment is made by a third party: Fowler v. Smith, 153 Pa. 639; Ebert v. Johns, 206 Pa. 395. The acceptance of a bill of exchange or check of a third person for a less amount than that due in satisfaction thereof operates as an accord and satisfaction: 1 C. J. 548. It might be argued that the part payment of a premium cannot, in view of the provisions of the Act of May 17, 1921, P. L. 789, 817, prohibiting insured persons and applicants for insurance from accepting rebates, be regarded as payment in full of the premium in question. And, also, that a liquidated debt admitted to be due is not rendered unliquidated by the assertion of a counterclaim or set-off so that it may be discharged by the payment of a smaller amount.

The first of these contentions can be readily dismissed, inasmuch as the defendant received no portion of the premium. The $51.49 was retained by Dilkes, who is a licensed insurance broker, as his compensation.

The second contention can be readily solved if it be kept clearly in mind that the transaction must be regarded as raising a dispute between the plaintiff and Dilkes. Had the plaintiff maintained an account with Dilkes in connection with the policy in question, there would have been no doubt that Dilkes would be entitled to his commission. Instead of the plaintiff, who must be presumed to have had full knowledge of the situation, returning the check to Dilkes, it accepted and cashed the same and retained the proceeds thereof. There was no notice given to the defendant that the check of Dilkes was insufficint. The only communication with reference to the insufficiency of the check was with Dilkes, which communication was had about a week after the plaintiff had cashed the check and retained the proceeds thereof.

The check was for the full amount of the premium less the broker's commission. Dilkes asserted a set-off to the claim of the plaintiff for the full amount of the "estimated advance premium." Whether Dilkes was justified or not, in so far as the plaintiff was concerned, the fact remains that there was a dispute. Dilkes offered to pay the full amount of the premium, less the commissions, which, he maintained, were due him, on the condition it was to be received by the plaintiff company in full settlement of the premium. We are

constrained to hold, therefore, that the acceptance of the money so offered is an acceptance of the condition imposed. When a claim is disputed or unliquidated and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be accepted in full satisfaction of the claim or not at all, the retention and use thereof by the creditor constitutes an accord and satisfaction: 1 C. J. 562.

The plaintiff should have known from the circumstances herein detailed and from the accompanying letter that the check was tendered in full settlement of all the premiums due under the policy. Further, the notation on the check shows conclusively that it was offered on condition of it being in full satisfaction of the debt. Neither the check nor the proceeds were ever returned or offered to be returned by the plaintiff to Dilkes or to the defendant. We must, therefore, hold that the check was accepted on the condition that it was offered, that thereby the plaintiff recognized its liability to Dilkes for the payment of the commissions as broker, and that its acceptance constituted a full and complete discharge of the amount due as the "estimated advance premium."

Paragraph N of the policy sued upon provided: ". . . that the surplus accruing upon this policy . . . shall be divided equally between the company and the insured. . . . The right to receive any dividend under this policy shall be forfeited if the premium is not paid within sixty days from the effective date of this policy." The effective date of the policy was January 1, 1930. The policy has a provision "minimum premium for this policy shall be $40," and another provision, "estimated advance premium $514.85."

Section A of the policy provides that "the premium is based upon the entire remuneration earned, during the policy period, by all employees of the employer engaged in the business operations described in said declaration. . . . At the end of the policy period the actual amount of the remuneration earned by the employees during such period shall be exhibited to the company . . . and the earned premium adjusted in accordance therewith. If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the company; if less, the company shall return to this employer the unearned portion, but in any event the company shall retain the minimum premium stated in said declarations."

The policy also contains the standard Pennsylvania workmen's compensation endorsement approved by the Insurance Commissioner of Pennsylvania under The Insurance Company Law of 1921, P. L. 682, which in a general way provides that the policy "is issued by the insurance company and is accepted by the insured employer with the agreement that all of the premium rates are subject to increase or decrease with the rating manual and rating plans approved by the Insurance Commissioner of Pennsylvania."

It is contended by the plaintiff that the payment of February 13, 1930, was not a payment of "the premium" within the sixty days from the effective date of the policy, and, therefore, the defendant has forfeited its portion of the surplus accruing upon the policy in pursuance to the provisions of section N thereof.

It appears to the court that the position assumed by the plaintiff in this case is unconscionable. The company, with knowledge, on February 13, 1930, according to its contention, that the payment in full of the premium had not been made, did not cancel the policy, in which event the broker could have replaced the business elsewhere and derived the benefit from this replacement to which he was entitled, and the parties would, under those circumstances, have been subsequently in the same position as they were in the beginning, without much injury to either side. The defendant was not notified by the

plaintiff. It waited until the amount of cash received by it had been consumed, according to its contention, by the earned premium and then canceled the policy. The effect of such conduct, if the contention of the plaintiff be sustained, would be to deprive the defendant of its right to receive the surplus accruing upon the policy.

The provisions in the policy with reference to the time of payment of "the premium" are in doubt and possibly susceptible to several conflicting interpretations. The general scheme for the payment of premium mentioned in the policy was provided by The Insurance Company Law of 1921, *i. e.*, that the premium rates are subject to increase or decrease in accordance with the rating manual and rating plans approved by the Insurance Commissioner of Pennsylvania. In addition, the premium is based upon the entire remuneration earned during the policy period by all employees of the employer, and that at the end of the policy period the actual amount of the remuneration earned by the employees is determined. Necessarily, there must be an "estimated advance premium," and there is in the policy such a premium provided for, and there is likewise a provision for a "minimum premium." Whether the last clause of provision N of the policy applies to the "minimum premium" or to the "estimated advance premium" is difficult to determine with any degree of precision. At least it is doubtful. Where doubt exists as to the construction of the policy (which was prepared by the plaintiff company, and upon the faith of which the defendant has incurred an obligation) such construction will be adopted as will be favorable to the defendant. And if other things are equal, a construction most beneficial to the defendant will be adopted when the terms of the policy and the relation of the parties leave it doubtful as to the sense in which the word "premium" was used. To state the proposition conversely, it may be said that everything is to be taken most strongly against the plaintiff insurance company: 6 R. C. L. 854, section 242. Forfeitures are not regarded with favor: 21 C. J. 100, section 76; Brown *v.* Vandergrift, 80 Pa. 142; Andrews *v.* Landis, 24 Dist. R. 876.

The equities of the case, considering what has transpired therein, must be regarded in favor of the defendant. Had the plaintiff done that which ordinary business prudence and common business rules dictate, it would have forthwith notified the defendant company of the fact that the full premium had not been paid, that it would not accept the payment of a smaller amount by permitting a deduction for brokers' commissions and would have immediately returned to Dilkes the amount of his check. It should not have cashed the check and retained the proceeds thereof. The retention of the proceeds of the check must, in our opinion, be regarded as a ratification of the position of Dilkes as a broker in the transaction and a declaration and recognition of the fact that he, Dilkes, was entitled to a commission.

Since the plaintiff is entitled to only one satisfaction, its acknowledgment that it was received and its retention thereof operate to extinguish its right: Jackson *v.* Penna. R. R. Co., 66 N. J. L. 319, 55 L. R. A. 87.

It would seem unjust and repugnant to reason and fair business dealing that the plaintiff accepting a payment from a supposed stranger of defendant's debt should be allowed to maintain an action against the defendant, pleading and thereby ratifying such payment, on the technical theory that he was a stranger to the proposition. The plaintiff has himself for this purpose allowed Dilkes to make himself a quasi party and consented to treat him thus, so far as receiving his check was concerned. To regard the premium paid, so far as Dilkes and defendant are concerned, is but to hold the plaintiff to the consequences of its own act. Shall the plaintiff collect the debt again? Under

what circumstances can Dilkes, the supposed stranger and interloper, recover back? What matters it to the plaintiff who pays? The payment of the premium, although it be made by one who the plaintiff now contends is not a party to the contract, is still an extinguishment of the demand: Crumlish's Admin'r v. Central Imp. Co., 38 W. Va. 390; Harrison v. Hicks, 1 Port. (Ala.) 423. Where the plaintiff has actually received and accepted contribution in satisfaction of its claim for the "premium" due under the policy, to allow it to maintain an action for the "same" afterwards would seem to shock the ordinary sense of justice of every right-thinking man.

We are constrained to find in favor of the defendant.