## John Kleppner *v.* D. P. Lemon, Appellant.

*Lease—Oil and gas lease—Implied condition.*

It is an implied condition of every lease of land for the production of oil therefrom that when the existence of oil in paying quantities is made apparent the lessee shall put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee. In determining when and where such wells shall be located, regard must be had to the operations on adjoining lands, and to the well known fact that a well will drain a territory of much larger extent when the sand rock in which the oil or gas is found is of coarse and loose texture than when it is of fine grain and compact character. Whatever ordinary knowledge and care would dictate as the proper thing to be done for the interests of both lessor and lessee under any given circumstances is that which the law requires to be done as an implied stipulation of the contract.

A lease conferred on the lessee " the exclusive right of drilling and

operating for petroleum and gas on the plaintiff's land." If oil and gas were found certain royalties were to be paid. There was no distinct covenant for putting down wells on the land, except that which related to the first or experimental well which was to determine the value of the land for oil purposes. The right to divide the leasehold and to sublet the parts into which it was divided for oil purposes was distinctly reserved by the lessee. The defendant had oil and gas leases on adjoining properties. He put down one well on plaintiff's land and other wells on adjoining lands near to the boundaries of plaintiff's land with the express purpose of securing the oil under plaintiff's lands through these wells. *Held,* (1) that the lease contemplated the production of the oil underlying the plaintiff's lot by means of operations conducted on its surface; (2) that the number and location of the wells necessary to carry out the purposes of the contract was a subject belonging primarily to the lessee; (3) that in disposing of this question, the lessee was bound to take into consideration the fact that his lessor was the owner of the oil, and to arrange and conduct his efforts to bring it to the surface in such manner as should best protect the interests of both parties to the contract; (4) that he was not bound to put down more wells than were reasonably necessary to obtain the oil of his lessor, nor to put down wells that would not be able to produce oil sufficient to justify the expenditure; (5) that the fact that the oil might be obtained in time through other wells, on the lands of other owners, was not enough to excuse the lessee from his implied undertaking to operate the land for the best interests of both owner and operator.

In such a case the court may decree on bill in equity filed that unless the defendant shall drill another well within a certain time specified his leasehold estate in said land shall be deemed to be abandoned, except as to the well actually drilled on plaintiff's land. and a certain specified space around it.

Argued May 7, 1896. Appeal, No. 25, Oct. T., 1896, by defendant, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1896, No. 188, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed and decree modified. MITCHELL, J., dissents.

Bill in equity to compel defendant to put down oil wells. WHITE, J., filed the following opinion:

1. The plaintiff made a lease to the defendant, dated June 15, 1894, for a term of two years, for oil and gas purposes, of a triangular piece of ground, containing between seven and eight acres, in Penn township, this county. The plaintiff was to receive one eighth of the oil, and if gas was produced in sufficient quantities to justify marketing it, he was to receive $500 per

annum for each well. The defendant had the right to commence a well within thirty days, or, in default thereof, to pay to the plaintiff $35.00 a month, in advance, until such well should be commenced or the lease abandoned.

2. The defendant formed a partnership with other persons in this lease, and also in leases of several other properties in the neighborhood, embracing land adjoining the property of the plaintiff, and they are the real defendants in this case.

No well was begun on the plaintiff's property until in February, 1895, which was completed in the spring of 1895, producing about five barrels of oil per day. This well was within fifteen or twenty feet of the line on the southern side of plaintiff's property.

3. In March, 1895, the defendants began a well on the farm of Stotler, adjoining the plaintiff's property, and within one hundred and fifty-seven feet of the line of plaintiff's property, which was completed in May, 1895, at first producing about one hundred and twenty barrels a day, and still producing about forty barrels a day. The defendants also put down several wells on adjoining property, some of which were good producing wells, and they are now putting down a well on an adjoining tract, within two hundred and fifty feet of plaintiff's line.

4. The well on plaintiff's land is on high ground and was drilled through hard or compact rock. The Stotler well was through loose rock. It was down on the lower ground, near the creek, and a large portion of the plaintiff's land adjoining it is of the same character.

5. The defendants have declared their intention not to put down any more wells on the plaintiff's property, alleging that the probabilities of getting a good well would not justify the expenditure, and they have produced witnesses who testify to that effect. They also contend that the present well will drain the whole property, and that the whole tract is necessary for the protection of that well.

6. But I find from the evidence the following facts : That wells drilled in hard and compact rock, in oil districts are generally small, and drain only a very limited area; that wells drilled in loose rock are generally large and drain a much greater area, sometimes for a distance of one thousand feet; [that the well on the Stotler farm drains a portion of the oil in plaintiff's

farm, and that, during the life of this lease, it, and other wells within three hundred feet of plaintiff's line, may drain all the oil from the low ground of plaintiff's land; that there is a strong probability, if not an absolute certainty, that oil can be obtained from the low ground of plaintiff's land, and it might be as good a well as that on the Stotler farm; that the well on the plaintiff's ground will not drain the oil from the low ground, and from the character of the rock, will not, in all probability, drain the oil within a radius of three hundred feet.] [1]

### CONCLUSION OF LAW.

This lease contains no covenant for full development or putting down any more than one well, and yet it may be fairly inferred that both parties contemplated a full development of that territory, and that as many wells would be put down as might reasonably be supposed would be profitable to both parties : McKnight v. The Gas Company, 146 Pa. 185.

But this case does not depend upon the enforcement of such an implied covenant. [The equity of the plaintiff arises more especially out of the circumstances of the case. The defendants are getting oil from plaintiff's property through wells on adjoining tracts, to his manifest injury, without paying him his royalty. The defendants insist upon holding on to the lease of the whole property and refuse to sink another well, although there is a strong probability, almost a certainty, of getting a good, paying well, upon the low ground. Why do they thus refuse ? Evidently because they expect to get the oil without the expense of another well. They say they want the whole tract to protect them in the well they have, but, under the evidence, that is not necessary. The present well cannot drain or secure the oil of the whole tract. Its location, and the kind of rock through which it was drilled, clearly indicate that it can drain only a small area, not more than an area of two hundred or three hundred feet radius around it. If the defendants would relinquish the lease as to the lower portion, plaintiff might get another party to develop it. Why not do so ? The answer is easily found : They fear it would get oil which they are now draining from this land, or which they may get by other wells on other adjoining tracts.] [7]

[Plaintiff's remedy is in equity. Had there been a special

covenant in the lease to sink other wells, doubtless an action on the covenant could have been maintained. But the plaintiff's case rests upon the wrongful acts of the defendants in holding on to the lease and refusing to sink any more wells on it, because they can get the oil from his land by other wells on adjoining tracts. This is a fraudulent use of plaintiff's lease, to his great injury, for which a bill in equity is the proper remedy.] [8]

The defendants must either develop this territory, by sinking another well, or give up that portion of the land which is not necessary for the protection of the present well. An area of three hundred feet radius of this well is amply sufficient for its protection. Defendants should be required to commence another well within thirty days from this date and prosecute it to completion with due diligence, or relinquish to the plaintiff the territory except within a radius of three hundred feet of the present well.

The court entered the following decree:

[And now, to wit, December 23, 1895, it is adjudged and decreed that the defendant, D. P. Lemon, is hereby restrained from setting up, asserting, claiming or maintaining as against the plaintiff, or his assigns, or any other present or future lessee of the said plaintiff, or as against any other person, any right, title or claim, by virtue of said lease, to put down any oil or gas well upon any part of the land so leased outside of and beyond a line around the well on said land operated by defendant and known as the Kleppner well No. 1, three hundred (300) feet from the said well, or to occupy any of the said plaintiff's land so leased by the defendant, excepting so much thereof as is necessary for the operation of the said Kleppner well No. 1, unless the defendant shall within ten (10) days from the notice of this decree file in this case a declaration to the effect that he will proceed to put down another well upon the said plaintiff's land in the lower part thereof, at such place as may be designated by the plaintiff, and shall within thirty (30) days from the date of this decree begin to put down such well upon the said plaintiff's land, and shall thereafter, with due and reasonable diligence, sink the said well to the depth required for obtaining the oil in the one hundred foot sand where the oil is shown to be located and found by the producing well sunk in the land adjoining the plaintiff's land.] [10]

[And it is further ordered that John S. Lambie, Esq., is hereby appointed master and examiner to take testimony and ascertain and report to this court the damages suffered and claimed by plaintiff in this case under the charges and prayers of his bill.] · [11]

*Errors assigned* among others were (1, 7, 8, 10, 11) portions of opinion and decree as above, quoting them.

*D. F. Patterson*, for appellant.—The lessee was not made subject to the judgment or caprice of the lessor, with respect to the number or location of wells to be drilled; nor was he bound to expend $5,000 or $6,000 in drilling a well simply because it might add to the lessor's royalties, unless there was a reasonable business prospect of profit to himself. Such is the doctrine of McKnight v. Gas Co., 146 Pa. 185, and Oil Co. v. Blair, 113 Pa. 83.

If oil is wrongfully drained from plaintiff's lands, and he is thereby deprived of the full measure of royalty to which he is entitled, he has a full, complete and adequate remedy at law: Oil Co. v. Blair, 113 Pa. 83 ; McKnight v. Gas Co., 146 Pa. 185.

*M. A. Woodward*, with him *W. G. Guiler*, for appellee.—When the circumstances show that the justice of the case is not fully met by the remedy at law, equity will assert jurisdiction even to compel restoration of personal property so that the principles are so well settled that it is a question of fact in the particular case whether or not it is within or without the jurisdiction of equity: Story's Eq. p. 23, sec. 33; Beasley v. Allyn, 12 W. N. C. 90 ; Appeal Brush Electric Co., 114 Pa. 585 ; Duffield v. Rosenzweig, 144 Pa. 536.

The case of Bradford Oil Co. v. Blair, 113 Pa. 83, cited by counsel for the defendant, was to recover damages for breach of a covenant in a lease, and the court in a very brief opinion merely held that such an action could be sustained, but in this case there is no such a covenant in the lease in question.

Plaintiff is entitled to a decree requiring of the defendant to start and put down a well within a stated time on the low lands of the plaintiff's property, or else relinquish or be restrained by injunction from asserting his claim to all of the Kleppner prop-

erty, excepting the well he has down, and a reasonable amount
of land surrounding it, according to the proofs of the land being
drained by such a small, insignificant well: McKnight v. Nat-
ural Gas Co., 146 Pa. 200.

We submit that the decree of the court below in this case
should be sustained, as it is based upon the facts which were
found by the court, and upon sufficient evidence: Stocker v.
Hutter, 134 Pa. 19; Warner v. Hare, 154 Pa. 548; Brotherton
v. Reynolds, 164 Pa. 134; Citizens' Pass. Ry. v. Harrisburg
Pass. Ry., 164 Pa. 274.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896:

This is in substance, though not in form, a bill for specific
execution of a contract. The defendant denies' that the con-
tract set out in the bill as the basis of the relief asked imposes
any obligation, express or implied, upon him to do that which
the plaintiff demands of him. The case must therefore depend
upon the proper interpretation of the contract, aided by the ne-
cessities and usages of the business to which it relates. The
plaintiff is the owner of a lot of land containing seven and
one half acres. The adjoining lands, at least on two sides, were
being developed as oil lands by the defendant. He applied to
the plaintiff for, and obtained, a lease for oil and gas covering
his tract. This lay in a triangular shape with its base about
seven hundred and fifty feet long on land of Stewart; its per-
pendicular resting against the tract known as the Stotler tract;
and its hypothenuse about one thousand feet long abutting on
the right of way of a railroad. The lease confers on the lessee
" the exclusive right of drilling and operating for petroleum
and gas " on the plaintiff's land. If oil is found, the lessee
covenants to pay a royalty of one eighth of all oil produced,
free of cost or expense, to the lessor. If gas is found in suffi-
cient quantity to justify marketing it, he is to pay the sum of
$500 per annum for each well. The right to divide the lease-
hold, and to sublet the parts into which it is divided, for oil
purposes, is distinctly reserved by the lessee. There is no dis-
tinct covenant for putting down wells on the land except that
which relates to the first, or experimental well, which was to
determine the value of the land for oil purposes. But in a lease
for oil purposes, a stipulation that other wells shall be put down,

where the land is shown to be valuable for oil by the production of the first or test well, is not indispensable. The nature of oil and gas, the pressure of the superincumbent rocks, and the vagrant habit of both fluids under the influence of this pressure, enter into the contemplation of both parties to such an agreement: McKnight v. The Gas Co., 146 Pa. 185. It is an implied condition of every lease of land for the production of oil therefrom that when the existence of oil in paying quantities is made apparent the lessee shall put down so many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee. In determining when and where such wells shall be located regard must be had to the operations on adjoining lands, and to the well known fact that a well will drain a territory of much larger extent when the sand rock in which the oil or gas is found is of coarse and loose texture, that when it is of fine grain and compact character. Whatever ordinary knowledge and care would dictate as the proper thing to be done for the interest of both lessor and lessee under any given circumstances is that which the law requires to be done as an implied stipulation of the contract. If this was not so held it would be practicable to defeat the very purposes of the contract, and to drain from the land of the lessor the oil underlying it and yield him nothing in return. The reason why this doctrine is modified in its application to gas territory is plainly stated in McKnight v. The Gas Company, supra. It is the difference in the manner of gathering and utilizing the product in gas and oil wells. Turning now to the findings of fact made by the learned judge of the court below, we learn that the defendant has put down one well on the plaintiff's land about midway across the base line of the triangle and very close to the line of the Stewart. The rock there is very compact and the well yields but four or five barrels per day. He has put down two wells on the Garlach, finding a loose rock and good wells. He has finished one large well on the Stotler quite near to the top of the triangle and in a very porous rock. He has another in progress on the same tract not far from the base end of the perpendicular side of plaintiff's land. These wells show with a reasonable degree of certainty that the upper half of the Kleppner lot is over a coarse porous rock and is capable of furnishing one or more good wells. The location

of the other wells referred to shows that this end of the Kleppner lot will in two or three years be completely drained by them; other persons will secure the royalties for his oil; and he will receive nothing whatever for the oil under the only valuable portion of his land. The findings further show that it is the expressed purpose of the defendant to secure Kleppner's oil through his wells on the Garlach and Stotler tracts of land. From the terms and purposes of the lease, from the nature and usages of the business to which it relates, and from the findings of fact to which we have referred, we draw the following conclusions of law:

First. The lease contemplates the production of the oil underlying the Kleppner lot by means of operations conducted on its surface.

Second. The number and location of the wells necessary to carry out the purposes of the contract is a subject belonging primarily to the lessee.

Third. In disposing of this question, the lessee is bound to take into consideration the fact that his lessor is the owner of the oil, and to arrange and conduct his efforts to bring it to the surface in such manner as shall best protect the interests of both parties to the contract.

Fourth. He is not bound to put down more wells than are reasonably necessary to obtain the oil of his lessor, nor to put down wells that will not be able to produce oil sufficient to justify the expenditure.

Fifth. But that the oil may be obtained in time through other wells, on the lands of other owners, is not enough to excuse the lessee from his implied undertaking to operate the land for the best interests of both owner and operator.

In the main, the decree appealed from is justified by these legal conclusions. The operator has the right, as we have seen, to locate the well he is to put down; but we think the court below was justified in holding that the evidence afforded good ground for the belief that a paying well could be found on the upper end of the triangle, if so located as fairly to command the oil underlying the land. The defendant may think differently. If so, he may surrender all of the land covered by his lease except that naturally tributary to the well near the Stewart line. The conclusion that this well cannot reach and bring

to the surface the oil in the loose rock under the other end of the plaintiff's land, but that the wells of the defendant now down, and in progress, on the Garlach and the Stotler lands, will do so seems fully justified by the evidence.   It is not found as a fact that these wells do now reach the . plaintiff's so as to draw from it.   It is the fact that they may do so that gives the plaintiff his claim to present consideration.   As bearing upon this general subject the attention of the profession is called to James v. Emery Oil Co., 1 Pennypacker, 242, and Blair v. Peck, 1 Pennypacker 247, cases which are not to be found in the authorized reports.   We affirm the decree with slight modifications as follows :

Upon consideration of the appeal from the decree of the court of common pleas No. 2 of Allegheny county, made on the 23d of December, 1895, it is ordered, adjudged and decreed that it is the duty of the defendant to proceed at once to drill and operate another oil well on the land of the plaintiff described in the bill, and in the lease thereto attached, near the northern end of said piece of land.

It is further ordered that if the defendant does not within ten days after notice of this decree file in this case a declaration setting forth that he will put down another well on said land near the north end thereof and begin the same within twenty days thereafter, and prosecute the same to completion with all reasonable diligence and in good faith, his leasehold estate in said land shall be deemed to be abandoned except as to the well known as Kleppner No. 1 and a space of three hundred feet around it on all sides, and the right of way, etc., incident thereto.

It is further ordered that the defendant be enjoined, from and after ten days after notice of this decree, from exercising any authority or control over any portion of said land except that now designated as appurtenant to Kleppner well No. 1, and that he retire from and surrender the same to the plaintiff, unless the notice hereinafter provided for be filed within the said ten days.

The record is now remitted that the court below may give such further orders as may be necessary to give full effect to above decree.

The costs to be paid by the appellant.

MITCHELL, J., dissenting.

A lessee who covenants to pay royalty on production is undoubtedly bound in good faith to make proper effort to develop the land. But while the interests of the parties are the same in getting the largest production yet in some respects they differ. The lessee has to bear the cost of putting down wells, and his interest is to proceed carefully, with due regard to expense and probable returns, while the lessor's interest is to have search and experiment without regard to present cost. The decision in regard to such matters belongs primarily to the lessee. It is a proper subject for agreement, and when the parties have agreed what shall be done their rights are not subject to the judgment of any court to fix a different standard. If the parties to the present controversy had expressly stipulated that one well should be sufficient for the whole tract, no court would venture to enlarge the test by directing another to be put down at the lessee's expense, yet the covenant of the lease amounts to just that, as I understand the learned court below to admit. I would reverse this judgment as a flagrant violation of the liberty and sanctity of contracts by raising a purely factitious equity to enable the complainant now to make a better bargain at the defendant's expense than he chose or was able to make for himself at the time.