**HALL et al. v. ROBERTS et ux. (No. 9430.)**

(Court of Civil Appeals of Texas. Fort Worth. Jan. 22, 1921. Rehearing Denied Feb. 26, 1921.)

1. **Mines and minerals ⬅︎79(3)—Time for payment of rental under lease determined.**

Where an oil and gas lease provided that a well should be started within 90 days and allowed a period of 270 days in which to complete it to the requisite depth, and also that lessee would begin another well within 60 days or pay a certain rental per annum until the expiration of 3 years, the 60-day period for payment of the rental began, not on expiration of the 270 days, but with the completion of the first well, which did not require the full time allowed therefor.

2. **Mines and minerals ⬅︎77—Intention must be shown to establish abandonment of lease.**

Abandonment of an oil and gas lease cannot be established, without showing an intention to abandon.

3. **Mines and minerals ⬅︎77—Evidence insufficient to establish abandonment of lease as ground for cancellation.**

In a suit to cancel an oil and gas lease for abandonment by lessee, evidence *held* insufficient to establish such ground.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by W. T. Roberts and wife against E. W. Hall and others to cancel an oil and gas lease. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Weeks, Morrow, Francis & King, of Wichita Falls, for appellees.

DUNKLIN, J. W. T. Roberts and wife, the owners of a 200-acre tract of land in Wichita county, instituted this suit to cancel an oil and gas lease for a term of 3 years from its date, executed by them on October 23, 1917, to E. W. Hall, trustee. Originally the lessee was the only defendant, but later, by an amended petition, plaintiffs also sued the Eleven Sands Oil Company, a private corporation, alleging that the lease was taken by Hall as trustee for the use and benefit of that company. From a judgment in favor of plaintiffs, canceling the lease, the defendants have appealed.

The lease was one of four leases, all taken by the lessee at the same time from different landowners; the four tracts lying contiguous to each other and aggregating in all 600 acres. The lease executed by plaintiffs contained a recital of the other leases, and one of the considerations recited was that a well should be started on plaintiffs' tract, or an adjoining tract, within 90 days from the date of the lease, and a period of 270 days was allowed in which to complete it. The depth of the well required was 2,000 feet, unless oil or gas should be found at a shallower depth. It was further stipulated that, should the well be drilled on an adjoining tract, then the lessee should drill a like well on plaintiffs' tract within 60 days from the completion of the first well. It was further provided that the first well should be drilled on plaintiffs' tract or within one mile of it. The lease contained a further stipulation that the lessee would begin operations upon plaintiffs' land within the time stipulated or else pay to the lessors a rental of $4 per acre per annum,· payable quarterly in advance, until a well should be commenced, and continue payment of such rentals until the end of the 3-year term covered by the lease, and the lessors bound themselves to accept said rentals in lieu of development of the land for oil and gas. The lease contained the further stipulation that no forfeiture of the lease would be claimed by the lessors until the end of its term, unless the lessee should fail to pay the agreed rentals. The lease contained no clause expressly providing for a forfeiture during the 3-year term which it covered, for failure to perform drilling obligations, or for failure to pay rentals, or for any other reason; in fact, the petition contained no allegations of failure of defendants to pay rentals.

One of the adjoining tracts leased contemporaneously with this one was owned by E. A. McClesky, and on that tract defendant oil company drilled a well to a depth of 2,007 feet, which proved to be a dry hole, and was abandoned on that account. No other well was drilled or started on any of the four tracts, or on any other land in that vicinity. The well on the McClesky tract was not begun within the period required by the original lease, but was begun within the period of extension agreed to by plaintiffs, as evidenced by a written instrument executed by them on March 26, 1918. By that agreement the time for beginning of drilling was extended to April 23, 1918, and the instrument stipulated an agreement on the part of plaintiffs:

"That the time for the completion of said well shall be two hundred seventy (270) days from the beginning thereof."

The well was finished to the required depth about the middle of August, 1918, at a cost to defendant oil company of $33,761.

Plaintiffs sought to cancel the lease on the theory of abandonment of it by the defendants, which was alleged. It was further alleged in the petition that the McClesky well was not drilled within one mile of plaintiffs' land, as provided for in the lease, and that defendants did not begin a well on plaintiffs' land within 60 days after the completion of

the McClesky well, as was further provided in the lease. Evidently those breaches of the contract were alleged as tending to support the allegation of abandonment, and not as, of themselves, furnishing a sufficient basis for cancellation, under the rules announced in such decisions of our Supreme Court as in Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, and Decker v. Kirlicks (Sup.) 216 S. W. 385.

The trial was before the court without a jury, and, while no findings or conclusions were filed, the judgment rendered necessarily implies a finding that defendants had abandoned the lease, as alleged by plaintiffs, and for that reason the lease was canceled. Appellants insist that the evidence was insufficient to support a finding that they had abandoned the lease, and we have concluded that that assignment should be sustained.

[1] The evidence chiefly relied on by plaintiffs to sustain their allegation of abandonment was the failure to begin another well after the completion of the well on the McClesky tract and the failure to pay rentals within 60 days after the completion and abandonment of that well. But Frank B. Blair, president of defendant oil company, was introduced as a witness by plaintiffs, and testified directly and positively that it was never the intention of his company to abandon the lease. He further testified that about 20 days prior to the institution of this suit he sent to the First National Bank of Iowa Park, the depositary named in the lease as plaintiffs' agent to receive rentals, the amount then due for rentals for the lease in controversy, to be deposited to plaintiffs' credit in the bank, which he had never received back, although he was notified by the bank that plaintiffs had refused to accept it. That tender of rentals was without 60 days after the expiration of the 270-day period allowed by plaintiffs after the well was started, for its completion, as stipulated in plaintiffs' agreement for extension of time for drilling; and Blair testified that according to his construction of that agreement he was allowed 60 days from the expiration of that period of 270 days within which to pay the rentals, notwithstanding the fact that the 270 days was not required to finish the well. But we believe that construction was incorrect, and that the 60-day period for payment of rentals began with the completion of the well. He further testified that ever since the well was finished

228 S.W.—64

he had kept Mr. Mote, an employee of the company, in its service at a salary of $50 per week and expenses, whose duties were to look after this and the other leases, and generally to watch after the interests of the company, including pulling casing and checking it out, and that Mr. Mote was in charge of the leases at the time this suit was instituted. He further testified that a meeting of the stockholders of the company was held on September 14, 1918, when an increase of the capital stock of the company was voted, for the purpose of developing the leases, and that none of the four leases mentioned had ever been offered for sale. Mr. Blair's testimony was corroborated by D. T. Mote, the employee, who further testified that plaintiff W. T. Roberts was present when the location for the well drilled on the McClesky tract was made, and agreed to that location, which location, according to the testimony of McClesky, was a little over one mile from plaintiffs' land. E. A. McClesky, the owner of the tract drilled on, did not contradict any of the testimony of Blair or Mote, recited above, and he and Blair and Mote were the only witnesses introduced. Neither of plaintiffs testified at all.

[2, 3] An abandonment of the lease could not be established without showing an intention of defendants to abandon it. While that intention may be established by circumstantial evidence, we do not believe that the evidence relied on by plaintiffs was sufficient to establish it. The failure to drill another well, if unexplained, in connection with other circumstances, would tend to support plaintiffs' contention; but the testimony of Blair and Mote was prima facie, and in the main, a reasonable explanation, and their testimony was not controverted by any witness.

The case of Hall v. McClesky, No. 9431, 228 S. W. 1004, this day decided by this court, was instituted by McClesky for a cancellation of his lease mentioned above, and in the opinion rendered in that case, by Associate Justice Buck, the rules governing the issue of abandonment are fully discussed. That discussion is applicable to this case, and we adopt it here, without the necessity of repetition, and without again citing the authorities there cited.

The judgment of the trial court is reversed, and the cause is remanded.