**CLUTTER v. WISCONSIN TEXAS OIL CO. et al. (No. 6583.)**

(Court of Civil Appeals of Texas. San Antonio. June 8, 1921. Rehearing Denied June 29, 1921.)

**I. Mines and minerals ☞77—In suit to cancel lease for discontinuing work, held error to overrule exception to part of answer setting up mortgage lien.**

In suit to cancel an oil and gas lease for discontinuing work, it was error to overrule exception to the part of defendant's answer setting up an outstanding mortgage lien on the leasehold land, there having been no ouster under it, or an impending ouster, and the lien not having been so pleaded as to entitle defendants to any relief on such account.

**2. Mines and minerals ☞77—Leases construed against lessee and forfeitures favored.**

On account of necessity to guard the rights of the landowner, oil and gas leases are construed strictly against the lessee, and forfeitures are favored.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. **Mines and minerals ☜77—Breaches of lessee by failing to continue development leave lessor to remedy of suit for damages, or for specific performance or cancellation.**

Breaches on the part of an oil and gas lessee by failing to continue the development of the land after finding gas thereon do not work a forfeiture, but leave the lessor to a remedy of suit for damages, leaving him also to the right of specific performance or cancellation.

4. **Trial ☜139(1), 178—Direction of verdict when there is any evidence in favor of party erroneous; evidence given its strongest probative value on motion to direct verdict.**

The settled rule in respect to directing a verdict in favor of one of the parties on the evidence is to give to the evidence its strongest probative force in favor of the ruling, so, if there is any evidence in favor of the party against whom the instruction is given, the direction would be error.

5. **Mines and minerals ☜77—Evidence insufficient to show as matter of law that lessees had abandoned.**

Evidence *held* insufficient to show as matter of law that defendant oil and gas lessees had abandoned their contract of lease with plaintiff, the lessor's successor, and would not fairly, honestly, and in good faith continue the further development of the property; the question being for the jury.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Joe Clutter against the Wisconsin Texas Oil Company and another. From judgment for defendants, plaintiff appeals. Judgment reversed, and cause remanded for new trial.

Barrett & Barrett and Douglas, Carter & Black, all of San Antonio, for appellant.

H. C. King, Jr., M. L. Roark, and W. H. Kennon, all of San Antonio, for appellees.

COBBS, J. As appellees accept the statement of the case made by appellant, we here copy the same:

Appellant, Joe Clutter, instituted this suit on January 14, 1920. The appellees are two corporations, Wisconsin Texas Oil Company and Wisconsin Texas Gas Company. Plaintiff sought to cancel an oil and gas lease held by defendants as lessees under assignment as follows:

Dated January 11, 1919, executed by Luciano Obayo and A. P. Barrett, as lessors, and George B. Mechem, as lessee, covering 300 acres of land fully described for a term of five years. The clauses of said lease contract which bear upon the issues in this cause are as follows:

"That the said lessors, for and in consideration of the sum of $1 in hand paid by the said lessee, * * * and of the covenants and agreements herein contained, does grant, demise, lease, and let unto the said lessee, successors and assigns, for the sole and only purpose of mining and operating for oil, gas, and other minerals. * * * The lessee agrees to commence a well or shaft within 12 months from this date, or pay at the rate of 50 cents per acre, in advance, for each additional year such commencement is delayed from the time above mentioned for the commencement of such well or shaft until completed; and it is agreed that the commencement of such well or of a mining shaft in merchantable ore or minerals shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease. * * * The lessee shall continue the development of said land, if oil, gas, or other minerals are found in paying quantities in the first well drilled, by starting a new well within 60 days from the date on which the first well is finished and continue such development until there shall be a well or shaft for every 10 acres, or less, on said land. It is further agreed and understood that should water be found in any well on said premises, and the lessee should abandon such well as an oil, gas, or other minerals well, the lessors may, at their option, retain such well as a water well by paying the lessee the actual cost and carriage from San Antonio, Tex., of the casing contained therein necessary to maintain such well as a water well. The said lease contract contained the usual provision for payment by royalties of parts of the oil, gas, or minerals produced, and also provided that lessee might assign his rights."

Appellant alleged that on December 8, 1919, he became the owner in fee simple of the 300 acres of land covered by the lease contract; that Luciano Obayo and A. P. Barrett executed the lease contract as set out above; that the rights of Geo. B. Mechem under said lease contract were assigned to appellees under date of July 1, 1919; that a well known as Barrett No. 1 was begun on said land under said lease on or about March 1, 1919, and completed and another one started known as Barrett No. 2, which was completed about June 1, 1919; that gas in paying quantities was found in both of said wells; that since the completion of said second well the appellees have wholly abandoned all operations under said lease, and have not begun another well and have made no effort to market the gas from the two wells so finished; that the appellees are and were foreign corporations without permits to do business in Texas, and by reason thereof are not permitted by law to carry on the business necessary to operating under the terms of the lease contract, nor can they defend this suit under the law.

Appellees answered by general denial, and special answer as follows: That they have acquired the rights of Geo. B. Mechem under said lease; that thousands of dollars were spent under said lease in developing two wells; that the volume of gas found in said wells is sufficiently large to be in paying quantities, but that there is no market for such gas in that vicinity; that the lease contract provides that the commencement of a well in paying mineral shall operate as full liquidation of all rent under said lease for the full term thereof, and that by reason thereof the commencement of said wells satisfies the lease in full to January 10, 1924; that a large lien exists upon the leas-

ed premises, rendering it unsafe for appellees to proceed with development operations; that appellees have placed casing in the two wells upon the leased premises, and if appellant recovers herein appellees pray that they be adjudged to be entitled to remove said casing.

By trial amendment appellant set up the fact that he acquired the interests of A. P. Barrett in the lease contract.

By supplemental answer appellees also pleaded the right to remove the casing from the two wells upon the leased premises.

At the close of the testimony appellees filed a motion for an instructed verdict in their favor. This motion was granted, and a verdict was returned herein in favor of appellees under the charge of the court. Judgment was rendered upon said verdict that appellant take naught and that appellees go hence with their costs.

[1] We think the court erred, as complained in the first assignment, in overruling the appellant's exception to that part of the answer setting up an outstanding mortgage lien, because there was no ouster under it, or an 'impending ouster, or so pleaded that would entitle him to any relief because of that. Thornton on Oil & Gas (3d Ed.) vol. 1, p. 549, § 386.

Appellant's remaining exceptions to the answers are rather directed to matters of defense which arise in the case, not necessary to pass upon here, but will be considered in passing upon the entire case.

The real and more important question is: Does this record, under the facts, disclose a case for the cancellation of the oil lease as a matter of law?

[2] We shall lay out of sight in this discussion that ancient and highly commendable doctrine that forfeitures are not favored, for in such cases as this, involving the consideration of mineral, gas, or oil leases, forfeitures are very much favored; that is, they are most strictly construed against the lessee. It is a rule of necessity to guard the rights of the landowner, as well as the public interest, against some of the most stringent covenants, often not well understood, burdened with unexecuted and profitless leases, incompatible to speedy development of the land and an obstacle to the use and the alienation of property. Cockrum v. Christy, 223 S. W. 308; McLaughlin v. Brook et ux., 225 S. W. 575; Thornton on The Law Relating to Oil & Gas, § 148; Brown v. Vandergrift, 80 Pa. 142.

But, while that rule is true, a lessee who begins the work in good faith, performs a very material part of the contract and attempts to, and will, if permitted, carry out and perform his entire obligation, is entitled to consideration.

This contract has no provision that ipso facto works a forfeiture and gives the right of re-entry. It has this significant provision:

"And it is agreed that the commencement of such well or of a mining shaft in merchantable ore or minerals shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease."

This lease was for five years from January 11, 1919. It was argued by the parties that appellee began drilling upon the lease on or about March 1, 1919, and continued until two paying gas wells were produced, the second well being completed about the 1st day of June, 1919.

Appellee contends:

"The lessee was under no obligation under the contract to do anything at all in the way of development before the expiration of one year from January 11, 1919, the date of the contract, because the agreement provides: 'The lessee agrees to commence a well or shaft within 12 months from the date hereof, or pay at the rate of 50 cents per acre, in advance, for each additional year such commencement is delayed from the time above mentioned for the commencement of such well or shaft until completed.' This suit seeking cancellation of the lease was filed on January 14, 1920."

There were a couple of wells drilled on the tract of land and a pipe line on this tract running across on another tract and another well and casing. There is some evidence of other work done on the property.

The lease provides that lessee agrees—

"to deliver to the credit of the lessors, heirs or assigns, free of cost, in the pipe lines or other receptacles used by the lessee, the equal one-eighth part of all oil and one-tenth of all gas * * * produced and saved from the leased premises. * * * The lessee shall continue the development of said land, if oil, gas, or other minerals are found in paying quantities, in the first well drilled, by starting a new well within 60 days * * * and continue such development until there shall be a well or shaft for every ten acres or less on said land."

Mr. Wolfe testified that the Barrett well No. 1 was drilled in three weeks to completion in the early part of 1919.

Mr. Rense testified that the Barrett No. 2 was completed about the middle of June, 1919.

Rense testifies that he left the well capped, and that he went back two or three times after its completion, the last time "about two months ago" (which would be about September, 1920) and found that:

"There was no work of any kind going on there; it was just as I had left it; there had been nothing done. At the time that I was out there on the occasions of these visits there was no operation going on. There was no gas being taken from this well. There was gas being taken from some wells, but these two wells were capped; they were kept capped up entirely."

Wolfe testified that after the Barrett No. 2 was finished all machinery was moved off

the lease herein involved. Defendants discharged all of their employees in September, 1919.

"As to whether there were any tools, machinery, or anything salable left on the lease, there was nothing left."

On several visits to the Barrett lease (the one in controversy here) since witness left the service of defendants:

"There was no machinery, no derrick, or anything on the Barrett lease at that time, nothing at all." ·

W. P. Ross, an employee of defendants, testified that defendants quit developing work in July, 1919. He was on the Barrett lease several times, and says: '

"There was no drilling going on at the time I was out there that I could see."

Appellant testified that he acquired the 300 acres of land by deed on December 8, 1919, and that there has been no drilling upon the property by any one since then.

The lessee commenced operations as required within the stated period, and put down two wells in merchantable ore or minerals which, under the terms of the contract, satisfied the rent, and started the second well and completed it within the required time, but did not, as required, "continue such development until there shall be a well or shaft for every 10 acres or less on said land."

[3] This suit is to recover the land and cancel the lease because of abandonment, on the sole ground that appellees breached the contract containing the express terms that required the appellee to continue the development of the land. Of course, under all the authorities, including the common-law doctrine, such breaches do not work a forefeiture, but leave the party to the remedy of a suit for ·damages. They leave him also to the right of specific performance or cancellation. We find the whole subject of cancellation of oil lease contracts, having close connection to the matters involved in this case, interestingly discussed by Associate Justice Greenwood, who wrote the opinion for our Supreme Court in Grubb v. McAfee, 109 Tex. 534, 212 S. W. 467. Among other things said in that opinion, he stated:

"It is a recognized rule that additions ought not to be made to contracts by implication beyond that which is necessary. And we· see no reason to doubt that full protection may be accorded the owner with respect to the enforcement of the implied covenant of the lessee to use due diligence in mineral development, without making a breach of the covenant a ground of forfeiture. In the first place, the party obligated to drill cannot abandon his contract without subjecting same to cancellation on that ground. And the power of a court of equity in decreeing specific performance is far-reaching, such power having been exercised in a proper case to compel either performance or abandon-

ment by a lessee of an oil lease, within a very few days. Kleppner v. Lemon, 176 Pa. 511, 35 Atl. 109; Id., 198 Pa. 581, 48 Atl. 483."

Judge Greenwood is discussing a case in which contracts to complete are implied. Here the agreement to complete is made by express obligation. In the absence of a clause of forfeiture, the principle is the same.

After securing the wells on June 15, 1919, an abandonment was claimed because no gas was or had been marketed after that date or any effort made to utilize the same; also because no new well was started within 60 days after the completion of the second well and the development continued. To show there was no intention to abandon the lease, it is claimed the appellees were. not required to do anything for a period of one year from the 11th day of January, 1919, but within three or four days after that date, and on· the 14th day of January, 1920, this suit was instituted, notwithstanding the two wells had been completed. Here time was not of the essence of the contract. It is also claimed that the appellant who was not the original lessor purchased the lease with the ex-· press purpose of bringing this suit to cancel it and to secure the valuable rights thereunder. Appellees contend there was no intention to surrender the lease nor to long delay its development as required by the terms of the contract; that the appellee became financially embarrassed and had to sell the tools to get some money for temporary relief; that the two wells were properly finished, anchored, and capped with a pipe line connected to one of the wells through which they were using the gas or fuel oil in the operation of the cactus plant situated upon the Hamilton-Swain tract, where, a witness testified:

"The company had headquarters and houses on the Hamilton-Swain tract. They had a cook house and machinery of different kinds. It was the camp and headquarters for that general vicinity out there. I know as a fact that the Wisconsin-Texas Oil Company and the Wisconsin-Texas Gas Company maintained their offices on the Hamilton-Swain tract. There is nothing there now at the present time in the way of machinery or drills, but there is ̣a shop and house still there. There is a machine out there to make a kind of cow feed out of the cactus plant. I don't know what it is; it is on the Hamilton-Swain tract."

It is contended that prior to appellant's purchase there was no complaint or demand made for appellees to proceed and continue with the development. Appellees, in partially completing the work, spent large sums of money, which would be entirely lost to them if not permitted to finish their contract. They liquidated all damages for rent for the entire rental term, as shown, and would suffer irreparable loss if not permitted to "con-

tinue" with this work to its completion. As seen from what we have said, which is based upon respectable authority, courts do not look with special favor to defaulters in oil lease contracts, but there is a well-settled principle of law that abandonment in any kind of contract involves an issue of fact, largely dependent upon the intent of the party. The intention to voluntarily abandon and relinquish the right must appear from the evidence. Such intention cannot in all cases be shown by a mere cessation of work for a certain period of time. We know, as said in Grubb v. McAfee, supra, that facts may be shown as evidence of the intention, as a matter of law, that the contract will not be completed, but we do not think they have that cogent effect here. In the Grubb Case, supra, supplies, machinery, etc., had been removed some nine years, and during which time no prospecting or drilling, or producing operations on the land was done, and when he abandoned it he refused to comply with his obligations. He did not deny that he intended to abandon the contract when he ceased work, and did not testify to any desire or purpose to resume operations. In this case the undisputed evidence shows that a material part of the contract was performed. Two producing wells were secured and capped. All the rent was paid; so the question is presented as a fact: Was that contract breached and abandoned to "continue such developments until there shall be a well or shaft for every 10 acres or less on said land"?

[4] The settled rule, in respect to directing a verdict in favor of one of the parties on the evidence, is to give to the evidence its strongest probative force in favor of the ruling, so, if there is any evidence in favor of the party against whom the instruction was given, it would be error. Such directed verdict can be proper only if under all the evidence and under all reasonable inferences therefrom, as a matter of law, the party against whom the instructed verdict was ordered was not entitled to recover. It may be further tested by saying it is a question "whether reasonable minds, viewing the evidence in its most favorable light for the appellant, could have returned a verdict in his favor. If so, the court erred in directing the verdict. If not, then the ruling of the court is correct."

[5] Applying these familiar rules to this case, we cannot say, as a matter of law, that the appellants had abandoned the contract, and would not fairly and honestly and in good faith continue the further development of the mineral properties. That was the real question at issue, which we regard as a jury question. E. W. Hall et al. v. E. A. McClesky, 228 S. W. 1005; Hall et al. v. Roberts et ux., 228 S. W. 1008.

There were sufficient facts to go to the jury as to whether or not the contract was abandoned, and the court was not justified in this case under the evidence to take it away from them and direct their verdict as a matter of law. It was therefore error to so instruct the jury, and the judgment of the trial court, for that reason, is reversed, and the cause remanded for a new trial.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes